# 21-3098

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

COURTHOUSE NEWS SERVICE et al.,

*Plaintiffs-Appellees*,

v.

PATRICIA GABEL, in her official capacity as the State Court Administrator of
the Supreme Court of the State of Vermont, et al.,

*Defendants-Appellants.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT
(Hon. Christina Reiss)

_____

**BRIEF OF AMICUS CURIAE CONFERENCE OF CHIEF JUSTICES IN
SUPPORT OF APPELLANTS**

_____

*Counsel Listed on Inside Cover*

Nolan L. Reichl
Peter J. Guffin
Ariel A. Pardee
PIERCE ATWOOD LLP
254 Commercial Street
Portland, Maine 04101
(207) 791-1304
nreichl@pierceatwood.com

*Attorney for Amicus Curiae*
*Conference of Chief Justices*

Laura M. O'Hanlon
c/o Peter J. Guffin
PIERCE ATWOOD LLP
Merrill's Wharf
254 Commercial Street
Portland, ME 04101
207-318-5748

*Special Counsel for Amicus Curiae*
*Conference of Chief Justices*

## CORPORATE DISCLOSURE STATEMENT

The Conference of Chief Justices ("CCJ") is a Virginia non-profit corporation.

CCJ has no parent corporation and no publicly held corporation owns ten percent or more of its stock.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES .................................................................. iii

IDENTITY AND INTERESTS OF *AMICUS CURIAE* ...........................................1

SUMMARY OF THE ARGUMENT ..................................................................2

ARGUMENT ..................................................................................4

    I.   The District Court erred when it failed to observe principles of comity, equity and federalism and abstain from adjudicating CNS's claim. .............4

        A.   The VSC exercised its constitutional authority to promulgate court rules protecting the privacy of sensitive data contained in court filings. ........................................................................5

        B.   Considerations of equity, comity and federalism required the District Court to abstain from deciding CNS's challenge.....................11

        C.   The tenets of appropriate federal-state relations and sound judicial administration strongly counsel in favor of judicial restraint in this case. .......................................................................21

CONCLUSION ...............................................................................29

CERTIFICATE OF COMPLIANCE WITH RULE 32...........................................31

CERTIFICATE OF SERVICE ...............................................................32

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bethpage Lutheran Serv., Inc. v. Weicker*,
 965 F.2d 1239 (2d Cir. 1992) ...........................................................12

*Bronx Defs. v. Off. of Ct. Admin.*,
 475 F. Supp. 3d 278 (S.D.N.Y. 2020) ...................................... 11, 13

*Courthouse News Serv. v. Brown*,
 908 F.3d 1063 (7th Cir. 2018), *cert. denied*, 140 S.Ct. 384 (2019) .. 14, 20, 21,
 28

*Courthouse News Serv. v. Planet*,
 750 F.3d 776 (9th Cir. 2014) ...........................................................19

*Courthouse News Serv. v. Schaefer*,
 2 F.4th 318 (4th Cir. 2021) ..............................................................19

*Courthouse News Serv. v. Tingling*,
 No. 16-CV-8742, 2016 WL 8505086 (S.D.N.Y. Dec. 16, 2016)...................19

*Cullen v. Fliegner*,
 18 F.3d 96 (2d. Cir. 1994) ...............................................................22

*Deem v. DiMella-Deem*,
 941 F.3d 618 (2d Cir. 2019) ............................................................12

*Diamond "D" Constr. Corp. v. McGowan*,
 282 F.3d 191 (2nd Cir. 2002) ..................................................... 11, 21

*Disability Rts. New York v. New York*,
 916 F.3d 129 (2d Cir. 2019) ..................................................... 13, 14, 19

*Falco v. Justs. of the Matrimonial Parts of Supreme Ct. of Suffolk Cty.*,
 805 F.3d 425 (2d Cir. 2015) ............................................................13

*Glen 6 Assocs., Inc. v. Dedaj*,
 770 F. Supp. 225 (S.D.N.Y. 1991) ...................................................12

Page(s)

*Gregory v. Ashcroft*,
   501 U.S. 452 (1991)..........................................................................................5

*Hall v. Valeska*,
   509 F. App'x 834 (11th Cir. 2012)...................................................................14

*Harrison v. Nat'l Ass'n for the Advancement of Colored People*,
   360 U.S. 167 (1959)........................................................................................29

*Hartford Courant Co. v. Pellegrino*,
   380 F.3d 83 (2d Cir. 2004),
   vacated and remanded, 371 F.3d 49 (2d Cir. 2004.............................. 17, 18, 19

*Hernandez v. Carbone*,
   567 F. Supp. 2d 320 (D. Conn. 2008).............................................................12

*In re Essex Search Warrants*,
   2012 VT 92, 192 Vt. 559, 60 A.3d 707 (2012) ...............................................22

*In re VSP-TK / 1-16-18 Shooting*,
   2019 VT 47, 210 Vt. 435, 217 A.3d 560 (2019) ...............................................6

*Joseph A. ex rel. Corrine Wolfe v. Ingram*,
   275 F.3d 1253 (10th Cir. 2002) ......................................................................14

*Kaufman v. Kaye*,
   466 F.3d 83 (2d Cir. 2006) ................................................................ 13, 14, 19

*Kimbell v. Hooper*,
   164 Vt. 80, 665 A.2d 44 (1995)......................................................................23

*Kowalski v. Tesmer*,
   543 U.S. 125 (2004)........................................................................................21

*Kugler v. Helfant*,
   421 U.S. 117 (1975)........................................................................................22

*Lugosch v. Pyramid Co. of Onondaga*,
   435 F.3d 110 (2d Cir. 2006) ...........................................................................23

iv

<u>Page(s)</u>

*Miles v. Wesley*,
    801 F.3d 1060 (9th Cir. 2015) ........................................................14

*Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*,
    460 U.S. 1 (1983)...........................................................................12

*Nixon v. Warner Commc'ns*,
    435 U.S. 589 (1978).........................................................................5

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ................................................................ 14, 19

*Oglala Sioux Tribe v. Fleming*,
    904 F.3d 603 (8th Cir. 2018) ........................................................14

*Pennzoil Co. v. Texaco, Inc.*,
    481 U.S. 1 (1987)................................................................. 11, 12

*Quackenbush v. Allstate Ins. Co.*,
    517 U.S. 706 (1996).......................................................................11

*R.R. Comm'n v. Pullman Co.*,
    312 U.S. 496 (1941).......................................................................18

*Reigh v. Schleigh*,
    784 F.2d 1191 (4th Cir. 1986) ......................................................14

*Rizzo v. Goode*,
    423 U.S. 362 (1976).......................................................................16

*SKS & Assocs. v. Dart*,
    619 F.3d 674 (7th Cir. 2010) ........................................................20

*State v. Densmore*,
    160 Vt. 131, 624 A.2d 1138 (1993)...............................................22

*State v. Schaefer*,
    157 Vt. 339, 599 A.2d 337 (1991).................................................22

Page(s)

*State v. Van Buren,*
   2018 VT 95, 210 Vt. 293, 214 A.3d 791 (2019),
   as supplemented (June 7, 2019)........................................................22

*Wallace v. Kern,*
   481 F.2d 621 (2d Cir. 1973) ...........................................................12

*Wallace v. Kern,*
   520 F.2d 400 (2d Cir. 1975) ...................................................... 13, 14

*Younger v. Harris,*
   401 U.S. 37 (1971)........................................................ 12, 18, 21, 28

## STATUTES

Vt. Stat. Ann. tit. 4, § 37(b)(2) .........................................................6

Vt. St. Ann. tit. 9, § 2430 ................................................................9

Vt. St. Ann. tit. 9, § 2431 ................................................................9

Vt. St. Ann. tit. 9, § 2435 ................................................................9

Vt. St. Ann. tit. 9, § 2446 ................................................................9

Vt. St. Ann. tit. 9, § 2447 ................................................................9

Vt. Stat. Ann. tit. 12, § 1 ................................................................6

Vt. Stat. Ann. tit. 12, § 2 ................................................................6

Vt. Stat. Ann. tit. 12, § 3 ................................................................6

Vt. Stat. Ann. tit. 12, § 4 ................................................................6

Vt. Stat. Ann. tit. 12, § 5 ................................................................9

## RULES

Fed. R. App. P. 29(a) .....................................................................1

N.Y. C.P.L.R. 2102 ......................................................................19

Page(s)

N.Y. Ct. R. 202.5 .................................................................................19

Vt. R. Elec. Filing 5(b)(5) ......................................................................8

Vt. R. Elec. Filing 5(d) .......................................................................7, 9

Vt. R. Pub. Acc. Ct. Rec. 3(b) .................................................................8

Vt. R. Pub. Acc. Ct. Rec. 6(b) .............................................................7, 8

Vt. R. Pub. Acc. Ct. Rec. 7 .....................................................................8

Vt. R. Pub. Acc. Ct. Rec. 7(a)(1) .............................................................7

Vt. R. Pub. Acc. Ct. Rec. 7(a)(3) ....................................................... 9, 26

Appendix to Vt. R. Pub. Acc. Ct. Rec. 6, ............................................7, 8

## CONSTITUTIONAL PROVISIONS

Vt. Const. CH II, § 37 ............................................................................6

## OTHER AUTHORITIES

Administrative Order No. 11, Public Notice and Opportunity to Comment
Relative to Proposed Rules or Changes in Rules .............................................10

April 27, 2018 PACR Meeting Minutes Item 4.......................................9

August 10, 2018 PACR Meeting Minutes Item 7.....................................9

*Civil Division and Small Claims E-Filing Guide* at 3, 8 (December 2021),
https://www.vermontjudiciary.org/sites/default/files/documents/CIVIL
%20OFS%20FILER%20GUIDE%2012-21%20updated.pdf ................. 27, 28

*Court Information: Vermont File & Serve Site*, TYLER TECHS.,
https://vermont.tylerhost.net/ofsweb (last visited May 6, 2022)....................27

December 10, 2018 PACR Meeting Minutes Item 4..................................9

*Electronic Filing*, VT. JUDICIARY https://www.vermontjudiciary.org/about-
vermont-judiciary/electronic-access/electronic-filing .....................................28

Page(s)

February 28, 2018 PACR Meeting Minutes Item 6...................................................9

Kim Velk, *Per Filing E-Filing Fee Eliminated*, Vᴛ. Bᴀʀ Aꜱꜱ'ɴ. (Apr. 10,
    2021), https://www.vtbar.org/per-filing-e-filing-fee-eliminated/ ..................28

Martha Wade Steketee & Alan Carson, *Developing CCJ/COSCA Guidelines
    for Public Access to Court Records: A National Project to Assist State
    Courts* xi (2002), available at https://www.jmijustice.org/wp-
    content/uploads/2014/04/CCJ-COSCA-Access-
    18Oct2002FinalReport.pdf ...............................................................................1

Memorandum from Vermont State Court Administrator to Members of the
    Vermont Bar (May 6, 2022),
    https://www.vermontjudiciary.org/sites/default/files/documents/Memo
    %20to%20Bar%20-%20May%206%2C%202022%20-
    %20Notice%20Regarding%20Refund%20for%20Duplicative%20Efili
    ng%20Fee.pdf ...................................................................................................27

*Next Generation Court Case Management System*, Vᴛ. Jᴜᴅɪᴄɪᴀʀʏ,
    https://www.vermontjudiciary.org/about-vermont-judiciary/next-
    generation-court-case-management-
    system#:~:text=The%20Vermont%20Judiciary
    %2C%20recognizing%20that,System%20(NG%2DCMS) ...........................24

Patricia Gabel, *NG CMS Update* (February 2020), https://www.vermont
    judiciary.org/sites/default/files/documents/February%202020%20NG-
    CMS%20Newsletter.pdf...................................................................................25

*Public Access to Court Records: Guidelines for Policy Development by State
    Courts*...............................................................................................................1

Thorin Klosowski, T*he State of Consumer Data Privacy Laws in the US
    (And Why It Matters)*, NY Times (Sept. 6, 2021) *available at*
    https://www.nytimes.com/wirecutter/blog/state-of-privacy-laws-in-us/ ..........9

Tyler's Odyssey File and Serve User Guides (available at
    https://www.vermontjudiciary.org/about-vermont-judiciary/electronic-
    access/electronic-filing)...................................................................................25

Page(s)

*Vermont eFiling General Policy and Procedure Guide* at 7-8 (April 2021),
https://www.vermontjudiciary.org/sites/default/files/documents/VERM
ONT%20OFS%20Policy%20and%20
Procedure%20GUIDE%20v3%204-21.pdf....................................................25

*Vermont Judiciary Announces New Fee Structure for eFiling*, VT. JUDICIARY
(Mar. 31, 2021), https://www.vermontjudiciary.org/news/vermont-
judiciary-announces-new-fee-structure-efiling ...............................................28

Vermont Supreme Court, *Emergency Order Amending Rule 5(d) of the
Vermont Rules for Electronic Filing* (Dec. 2021), *available at*
https://www.vermontjudiciary.org/sites/default/files/documents/EMER
GENCYPROMULGATEDVREF5%28d%29--
STAMPED%20%28003%29.pdf ....................................................................7

Vt. R. Elec. Filing (effective Mar. 2, 2020), *available at*
https://www.vermontjudiciary.org/attorneys/rules............................................3

Vt. R. Pub. Acc. Ct. Rec. (effective July 1, 2019), *available at*
https://www.vermontjudiciary.org/attorneys/rules............................................3

## IDENTITY AND INTERESTS OF *AMICUS CURIAE* [1]

CCJ was founded in 1949 to provide an opportunity for the highest judicial officers of each State and U.S. Territory to address matters of importance in improving the administration of justice, rules and methods of procedure, and operation of state courts and judicial systems. As part of its mission, CCJ supports the efforts of state courts in administering efficient and impartial systems of justice that serve the public interest, protect individual rights, and instill respect for the law.

CCJ has a strong interest in the subject matter of this proceeding. CCJ has consistently defended principles of federalism to protect state judicial independence and promote comity between state and federal courts—principles that are vital to our judicial system. CCJ has also long encouraged state courts to craft policies regarding public access to court records that balance individual privacy concerns, the need for transparency of governmental operations, and the integrity of the judicial system. [2]

---

[1] Pursuant to Fed. R. App. P. 29(a)(2), CCJ states that all parties have consented to the filing of this brief. Further, pursuant to Fed. R. App. P. 29(a)(4)(E), CCJ states that no party's counsel authored the brief in whole or in part; no party or party's counsel contributed money intended to fund preparing or submitting the brief; and no person, other than *amicus* or its counsel, contributed money that was intended to fund preparing or submitting the brief.

[2] In 2002, CCJ endorsed *Public Access to Court Records: Guidelines for Policy Development by State Courts*. *See* Martha Wade Steketee & Alan Carson, *Developing CCJ/COSCA Guidelines for Public Access to Court Records: A National Project to Assist State Courts* xi (2002), available at https://www.jmijustice.org/wp-content/uploads/2014/04/CCJ-COSCA-Access-18Oct2002FinalReport.pdf.

CCJ respectfully proposes that its perspective on the issues of federalism and public access to court records may be beneficial to this Court, as CCJ is intimately familiar with the role of state courts and the practical realities confronted by those courts in administering electronic filing rules.

This *amicus* brief is being filed pursuant to a policy unanimously approved by CCJ's Board of Directors. That policy authorizes the filing of a brief only where critical interests of state courts are at stake, as they are in this case. Pursuant to CCJ's policy, this brief has been reviewed by members of a special committee of CCJ chaired by the Chief Justice of Kentucky and composed of the current or former Chief Justices of Delaware, Indiana, Kentucky, Missouri, North Dakota, Texas, and Utah. The committee has unanimously approved the brief for filing.

CCJ supports the position of Defendants-Appellants Patricia Gabel, et al., and urges reversal of the District Court's decision based on the doctrine of abstention.

## SUMMARY OF THE ARGUMENT[3]

Proper application of the principles of comity, equity, and federalism calls for federal court abstention in a challenge to rules governing the processing and maintenance of judicial records promulgated by a state's highest court, which shares

---

[3] Record references to filings in this matter are abbreviated as follows: Record Appendix ("R.A.___"); Defendant-Appellants Brief ("Aplt. Br.____"); Addendum ("Add.____").

2

the authority to establish such rules with the legislative branch of the state government.  In Vermont, the Vermont Supreme Court ("VSC") has the inherent, constitutional, and statutory authority to manage the state's judicial system by adopting rules and regulations governing both the electronic filing of court records, which the VSC has regulated through the Vermont Rules of Electronic Filing ("VREF"), and public access to court records, which the VSC has regulated through the Vermont Rules of Public Access to Court Records ("VRPACR").[4]

Principles of comity weigh against both the exercise of federal jurisdiction generally and against the specific injunction issued by the District Court.  Plaintiff-Appellees Courthouse News Service *et al.* (collectively, "CNS") seek to establish improper federal court oversight of the VSC and the Vermont Legislature's policy determinations embodied in both the VREF and the VRPACR, by asking this Court to uphold an injunction issued by the District Court for the District of Vermont.  The injunction unconditionally and in blanket fashion prohibits the pre-access review of newly filed civil complaints by court staff to ensure filers' compliance with the applicable rules, and to protect confidential information from being inadvertently made available to the public via courthouse records access terminals.  Notably, the District Court did not enjoin enforcement of a specific court rule, such that the VSC

---

[4] *See generally* Vt. R. Elec. Filing (effective Mar. 2, 2020), and Vt. R. Pub. Acc. Ct. Rec. (effective July 1, 2019), both *available at* https://www.vermontjudiciary.org/attorneys/rules.

would remain free to promulgate a new rule, but, far more broadly, permanently enjoined a specific practice. Having done so, the District Court forever has stripped the VSC of its constitutional authority to promulgate court rules concerning pre-access review of filings, even where such rules may meet any applicable First Amendment standard.

The VSC should have the opportunity, in the first instance, to consider disputes over those court rules that it has fashioned and promulgated pursuant to its constitutional authority. To hold otherwise would fail to recognize that state courts are equally capable of guaranteeing federal rights as the federal courts, and would improperly inject the federal courts into state policy determinations regarding judicial administration, court operations, rulemaking, and processing of judicial records.

This Court should invoke abstention and remand this case to the District Court with instructions to vacate its order and dismiss CNS's complaint.

## ARGUMENT

I. **The District Court erred when it failed to observe principles of comity, equity and federalism and abstain from adjudicating CNS's claim.**

In challenging the electronic filing and public access rules carefully promulgated by the VSC, CNS asked the District Court to dictate to the Vermont Supreme Court how it must manage its clerks' offices, case management system, and court records. CNS now asks this Court to uphold an order that categorically

4

and permanently prohibits the clerks of Vermont's state courts from taking certain actions the VSC determined—after a significant period of thoughtful and thorough study, community discussion, and through constitutionally authorized rulemaking—strike an appropriate balance between the many competing interests at stake for the Vermont court system, the litigants who access it, and the public.

The District Court's order constitutes an inappropriate intrusion into the operations of the Vermont state court system. Even worse, it permanently prohibits the VSC from promulgating *any* rules authorizing pre-access review of civil complaints. The District Court's order thus not only impacts certain operations of the Vermont state court system, it deprives the VSC of its constitutional power to make rules and regulate the operations of the Vermont court system. The overbreadth of the District Court's order illustrates the need for abstention in this case.

**A.      The VSC exercised its constitutional authority to promulgate court rules protecting the privacy of sensitive data contained in court filings.**

"Every court has supervisory power over its own records and files." *Nixon v. Warner Commc'ns*, 435 U.S. 589, 598 (1978). Thus, how state courts review, process, and accept or reject pleadings is "an area traditionally regulated by the States." *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). The Vermont Supreme Court and the Vermont State Legislature share constitutional authority for creating

5

the rules governing court procedure and the administration of the state's judicial branch. *See* Vt. Const. CH II, § 37 ("The Supreme Court shall make and promulgate rules governing the administration of all courts, and shall make and promulgate rules governing practice and procedure in civil and criminal cases in all courts. Any rule adopted by the Supreme Court may be revised by the General Assembly."); *see also In re VSP-TK / 1-16-18 Shooting*, 2019 VT 47, ¶ 18, 210 Vt. 435, 217 A.3d 560 (2019) ("[W]e note that, like all court rules, the [Public Access to Court Records] Rules are subject to legislative review . . . and to revision by the Legislature."). The VSC may propose and amend such rules, which take effect unless objected to by the Legislative Committee on Judicial Rules ("LCJR"). *See* Vt. Stat. Ann. tit. 12, § 1. If an objection is made, the rules do not take effect until the LCJR presents the objection to the Vermont State Legislature, which may repeal, revise, or modify any rule or amendment to a rule. *Id.* §§ 1-4.

This shared constitutional structure ensures that any rule promulgated by the VSC receives democratic support from the people of Vermont, vis-à-vis their elected representatives in the Vermont State Legislature.[5] Consequently, CNS's lawsuit not only strikes directly at the VSC's ongoing responsibility to manage the

---

[5] Separately, the Vermont State Legislature expressly provided the VSC with statutory authority to "promulgate rules establishing an electronic case-filing system." Vt. Stat. Ann. tit. 4, § 37(b)(2).

administration of its courts and court records pursuant to its constitutionally and statutorily provided rulemaking authority, but undermines the Vermont State Legislature's ability to advocate for and legislate on behalf of its citizens.

In this case, CNS challenges certain rules of the VRPACR and VREF requiring Vermont court staff to perform a "gatekeeping" function, by conducting an individualized review of all electronic filings, including newly e-filed civil complaints, prior to allowing public access to such filings. CNS aims its challenge specifically at Rule 5(d) of the VREF, which, until the District Court's ruling,[6] required court staff to "review all electronic filings for compliance with [the VREF], and Rule 7(a)(1) of the [VRPACR]," the latter of which requires the filer—including a self-represented litigant—to determine whether all or any part of the record being filed must be restricted from public access. Filers can find the types of case records and information that must be restricted from public access set forth in Rule 6(b) of the VRPACR and the Appendix to Rule 6 of the VRPACR.[7]

---

[6] Shortly after the District Court issued its order enjoining the Vermont court clerks' pre-access review of newly filed, non-confidential civil complaints, the Vermont Supreme Court amended Rule 5(d) to comply with such order. *See* Vermont Supreme Court, *Emergency Order Amending Rule 5(d) of the Vermont Rules for Electronic Filing* (Dec. 2021), *available at* https://www.vermontjudiciary.org/sites/default/files/documents/EMERGENCYPR OMULGATEDVREF5%28d%29--STAMPED%20%28003%29.pdf.

[7] The Court can find the Appendix to Rules 5 and 6 at https://www.vermontjudiciary.org/sites/default/files/documents/Court%20Adminis trator%20Administrative%20Directive%20SG-

As is true with many state courts' electronic filing rules and procedures, both the VREF and the VRPACR require filers to correctly indicate the type of filing being submitted (e.g., family matters, etc.). *See* VRPACR Rules 6(b), 7; VREF Rule 5(b)(5). Filers also must be savvy enough to identify and redact or separate specific elements of confidential or personal information that are statutorily prohibited from being publicly accessible (e.g., Social Security or passport numbers, financial account numbers, etc.). *Id.*; *see also* Appendix to VRPACR Rule 6 (listing the statutes and court rules that provide restrictions or prohibitions on public access to certain information). Appropriately recognizing the significant privacy harms that may arise from relying *solely* on filers—many of whom are self-represented—to identify specific categories of protected filings and sensitive or non-public information in filings, the VSC shares the responsibility "to protect confidentiality and privacy where public access is restricted by [statute, rule, or court order]" with the filer. VRPACR Rule 3(b). The VSC does so consistent with its strong interest, and that of Vermont public policy generally, in ensuring the timely identification of non-compliant or defective filings in order to maintain an efficient and organized court system and to protect the privacy of its litigants and non-parties.[8]

---

1%20%282022%20Update%20to%20Appendices%20to%20Rules%205%20and%206%20of%20the%20Rules%20for%20Public%20Access_1.pdf.

[8] The policy decisions reflected in VSC's mandated pre-access privacy review reflect Vermont's broader public policy concerns with consumer data protection. In

Consequently, the VSC included in its filing rules a requirement for court clerks to conduct a preliminary, pre-access review of all court filings to ensure that sensitive protected information is not inadvertently released to the public, and that filings are valid and compliant with substantive administrative requirements. *See* VRPACR Rule 7(a)(3) and VREF Rule 5(d).

The VSC adopted the rules requiring pre-access review of court filings pursuant to its authorized rulemaking process,[9] as is set out in the VSC's

_____

the last decade, Vermont has established itself at the forefront of the state-government movement to provide greater protection of its citizens' data privacy, and specifically, its citizens' *online* data privacy—protections observers say exceed those guaranteed by the federal government, *see* Thorin Klosowski, T*he State of Consumer Data Privacy Laws in the US (And Why It Matters)*, NY Times (Sept. 6, 2021) *available at* https://www.nytimes.com/wirecutter/blog/state-of-privacy-laws-in-us/. For example, the Vermont State Legislature enacted one of the country's first laws regulating "data brokers", *see* Vt. St. Ann. tit. 9, §§ 2430-31, 2446-47, a recent amendment expanding the scope of its data breach notification law, *see id.* § 2435, and, of relevance here, a law prohibiting internet access to certain criminal, family, and probate matter court records, *see* Vt. Stat. Ann. tit. 12, § 5.

[9] The inclusion of that pre-access review in the VRPACR came after extensive discussions among members of the VSC's Advisory Committee on Rules of Public Access to Court Records about the responsibility to protect confidential information from public dissemination. *See* December 10, 2018 PACR Meeting Minutes Item 4 (debating the propriety of the court's "gatekeeping" function with respect to the restriction of protected information in court filings); *see also* August 10, 2018 PACR Meeting Minutes Item 7 (discussing the "allocation of filer vs. court staff responsibility for screening of electronic filing content for non-public information"); April 27, 2018 PACR Meeting Minutes Item 4 (discussing a proposed rule that "assigns certain responsibilities to judiciary staff to review each filing, in a manner prescribed by the rules, to determine whether the filing complies with the rules"); February 28, 2018 PACR Meeting Minutes Item 6 (identifying the tension between litigants and court clerks with respect to responsibility of the protection of

Administrative Order No. 11, Public Notice and Opportunity to Comment Relative to Proposed Rules or Changes in Rules. In connection with the promulgation and implementation of both the VREF and VRPACR, the VSC appointed—and still maintains—an Advisory Committee on Rules of Public Access to Court Records and a Special Advisory Committee on Rules for Electronic Filing. Administrative Order No. 11 requires these advisory committees to "afford notice of, and opportunity to comment upon, any proposed rules, or changes in rules," and provide, among other things, public hearings on proposed or changing rules. Both advisory committees held frequent meetings to discuss and revise the proposed rules, published the proposed rules and solicited public comment (both in writing and at public hearings), and met with the LCJR to discuss any concerns the Vermont State Legislature may have had. In short, the process that produced the current VREF and VRPACR was thorough, thoughtful, and transparent, and welcomed input from a variety of community stakeholders to ensure that the rules reflect the principles of fairness, efficiency, and protection of persons' private or confidential information.

---

confidential information). Meeting minutes for the Advisory Committee on Rules of Public Access to Court Records are available at https://www.vermontjudiciary.org/about-vermont-judiciary/boards-and-committees/access-records-committee, and meeting minutes for the Special Advisory Committee on Rules for Electronic Filing are available at https://www.vermontjudiciary.org/about-vermont-judiciary/boards-and-committees/e-filing-committee.

10

**B.    Considerations of equity, comity and federalism required the District Court to abstain from deciding CNS's challenge.**

"[F]ederal courts may decline to exercise their jurisdiction, in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest," including, for example, "considerations of proper constitutional adjudication, regard for federal-state relations, or wise judicial administration." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) (quotation marks and citations omitted); *see also Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 2 (1987) (noting that the Supreme Court has repeatedly recognized that "the States have important interests in administering certain aspects of their judicial systems," which suffice to implicate abstention by federal courts).   Exceptions supporting abstention, "though narrow in scope, are powerful in effect.   Indeed, when applicable, 'abstention is mandatory and its application deprives the federal court of jurisdiction in the matter.'" *Bronx Defs. v. Off. of Ct. Admin.,* 475 F. Supp. 3d 278, 284 (S.D.N.Y. 2020) (quoting *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 197 (2nd Cir. 2002)).

The Supreme Court and this Court have provided abundant guidance on the applicability of the traditional abstention doctrines, which collectively "reflect a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes." *Pennzoil Co.*, 481 U.S. at 11 n.9.   When examined individually, however, these doctrines should not be seen as "rigid

11

pigeonholes into which federal courts must try to fit cases." *Id.*; *see also Deem v. DiMella-Deem*, 941 F.3d 618, 624 (2d Cir. 2019) (citing *Pennzoil*, and stating that this Court is "free to chart a new course" and acknowledge "the existence of a distinct abstention doctrine for certain domestic relations disputes" that has not yet been expressly sanctioned by the Supreme Court). Moreover, "the factors relevant to abstention analysis are 'to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand.'" *Bethpage Lutheran Serv., Inc. v. Weicker*, 965 F.2d 1239, 1244 (2d Cir. 1992) (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 21 (1983)). Accordingly, a federal court need not shoehorn the facts of a particular case into one of the clearly defined doctrines of abstention in order for abstention to be appropriate, and may instead legitimately abstain based on the principles of comity and federalism that underlie each of the various well-established abstention doctrines. *See, e.g.*, *Wallace v. Kern*, 481 F.2d 621, 622 (2d Cir. 1973) (abstaining based on the principle of comity without relying on any traditional abstention doctrine); *Hernandez v. Carbone*, 567 F. Supp. 2d 320, 332 (D. Conn. 2008) (stating that "governing Second Circuit precedent and the principles of comity reflected in . . . [*Younger v. Harris*, 401 U.S. 37 (1971)]" require the court to abstain from adjudicating the plaintiff's facial constitutional claim); *Glen 6 Assocs., Inc. v. Dedaj*, 770 F. Supp. 225, 229 (S.D.N.Y. 1991) (stating that "[p]rinciples of comity and federalism thus dictate that we abstain

12

and this matter is remanded to the state system to effectuate the abstention," without citing a particular traditional abstention doctrine).

On more than one occasion, this Court has "examined the role of federal courts in civil litigation challenging the internal workings of state courts," *Kaufman v. Kaye*, 466 F.3d 83, 86 (2d Cir. 2006), and repeatedly held that "under the principle known as comity a federal district court has no power to intervene in the internal procedures of the state courts," *Wallace v. Kern*, 520 F.2d 400, 405 (2d Cir. 1975) (internal quotation marks omitted); *see also Disability Rts. New York v. New York*, 916 F.3d 129, 136 (2d Cir. 2019) (examining *Wallace* and abstaining from a lawsuit seeking an order requiring state courts to provide notice and hearing opportunities in certain guardianship proceedings); *Falco v. Justs. of the Matrimonial Parts of Supreme Ct. of Suffolk Cty.*, 805 F.3d 425, 427 (2d Cir. 2015) (stating that the plaintiff's "federal lawsuit implicates the way that the state courts manage their own divorce and custody proceedings—a subject in which the states have an especially strong interest." (quotation marks omitted)); *Kaufman*, 466 F.3d at 86 (quoting *Wallace* and abstaining from a lawsuit seeking an order requiring a state court to establish a new system for assigning appeals); *Bronx Defs.,* 475 F. Supp. 3d at 285 (quoting *Wallace* and abstaining from adjudicating claims in which the plaintiff sought the federal court to order the state court to make particular COVID-related accommodations).

13

Following the Supreme Court's decision in *O'Shea v. Littleton*, 414 U.S. 488 (1974), federal courts of appeals have held that "federal courts should be loath both on grounds of comity and federalism to intrude upon the rule-making functions of state courts." *Reigh v. Schleigh*, 784 F.2d 1191, 1198 (4th Cir. 1986); *see also, e.g.*, *Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1065-66 (7th Cir. 2018) (abstaining from enjoining a state clerk from conducting a pre-access review of newly filed civil complaints), *cert. denied*, 140 S.Ct. 384 (2019) (mem.); *Oglala Sioux Tribe v. Fleming*, 904 F.3d 603 (8th Cir. 2018) (abstaining from enjoining a state agency to implement certain procedures to protect the rights of Indian parents, custodians, children and tribes in the context of a child protection case); *Miles v. Wesley*, 801 F.3d 1060, 1064, 1066 (9th Cir. 2015) (abstaining from enjoining a state court from reducing the number of courthouses used for unlawful detainer actions); *Hall v. Valeska*, 509 F. App'x 834, 835-36 (11th Cir. 2012) (per curiam) (abstaining from enjoining a state court's allegedly discriminatory jury selection procedures); *Joseph A. ex rel. Corrine Wolfe v. Ingram*, 275 F.3d 1253, 1271 (10th Cir. 2002) ("The reasoning of *O'Shea* and its progeny suggests that federal court oversight of state court operations, even if not framed as direct review of state court judgments, may nevertheless be problematic for Younger purposes.").

In this case, like in *Wallace, Kaufman*, *Disability Rights*, and others, the relief sought by CNS—and the District Court's order unconditionally and permanently

14

prohibiting any pre-access review of civil complaints by court staff—constitutes impermissible federal interference into the internal procedures of a state court. The intrusion, moreover, goes far beyond even the sort of "continuing oversight of state court proceedings" that has been found sufficient to give rise to abstention in the prior cases. The District Court did not enjoin the enforcement or application of the Vermont rules at issue, it completely prohibited Vermont from *ever* promulgating any rules authorizing pre-access review of civil filings. R.A. 546 ("Defendants are HEREBY ENJOINED from delaying public access to electronically filed civil complaints until the Vermont Superior Courts' pre-access review process is complete.").

As the District Court correctly observed, the First Amendment right of access "is not absolute, and must, in certain circumstances, give way … to other rights or interests." R.A 537 (quotation marks omitted). Even CNS has acknowledged that delays in public access to civil complaints may be permissible in certain circumstances. *See* Transcript of Oral Argument at 11, *Courthouse News Service v. Gabel*, No. 21-cv-132 (D. Vt. Oct. 25, 2021) (CNS arguing delays in access may be "justified"). Consequently, rules restricting the sort of instant public access CNS seeks here may be justified and comport with the First Amendment. But the District Court's injunction does not permit for further VSC rulemaking concerning pre-review public access, and, instead, prohibits pre-access review in perpetuity, on

penalty of contempt. In that regard, and as noted above, the District Court permanently stripped the VSC of its constitutional authority to promulgate rules and manage the Vermont state court system.

Although the CCJ does not endorse the District Court's First Amendment analysis as it was applied in this case, the District Court's order prevents the VSC from fashioning pre-access review rules that may be permissible under the First Amendment or even more protective of First Amendment rights than what is constitutionally required. Pursuant the District Court's order, the VSC can never authorize pre-access review of civil filings, regardless of whether such review imposes trivial burdens, addresses extreme or exigent circumstances, or otherwise reflects the "rights or interests" sufficient to justify denying instant access. For instance, were the VSC to develop a procedure that would allow pre-access review to be conducted by staff in fifteen minutes—or even one minute—for ninety-nine percent of the civil complaints filed, or adopt rules governing pre-access review in response to filers intentionally or maliciously filing civil complaints that include other persons' protected information, the District Court's order prohibits either effort. Preempting state court authority in this regard dramatically upsets the balance of power between state and federal courts, and runs roughshod over the principles of equity and comity that preserve the federal system. *See Rizzo v. Goode*, 423 U.S. 362, 378, (1976) ("Where, as here, the exercise of authority by state officials is

16

attacked, federal courts must be constantly mindful of the special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law." (quotation marks omitted)).

While the District Court cited *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004), as a basis for rejecting the abstention doctrine, the case is readily distinguishable. In *Hartford Courant*, several local newspapers brought suit in the District of Connecticut against the chief justice of the Connecticut state supreme court and the chief administrator of Connecticut state courts, challenging a newly uncovered, yet longstanding, Connecticut state court practice of sealing certain docket sheets, as well as entire case files, pursuant to a certain administrative memorandum.[10] The plaintiffs alleged this practice violated their First Amendment rights, and requested the court order the defendants to, among other things, unseal the records that had been sealed pursuant to the memorandum. The defendants raised various doctrines of abstention as defense in the district court, but ultimately, the trial court found the abstention arguments unpersuasive, and dismissed the case on other grounds. *See id.* at 99.

---

[10] The memorandum seemed to presume underlying judicial orders, although this Court could not determine that the implementation of the memorandum's direction fell within the scope of a particular judicial officer's legitimate statutory authority.

On appeal to this Court, the appellees again raised abstention, and, like the District Court, this Court also found the doctrines inapplicable. Although the record in *Hartford-Courant* was "threadbare," 380 F.3d at 98, this Court seemed to infer from oral argument that at least some of the conduct challenged by the appellants resulted from a "more flexible system of classification than is consistent with judicial orders," *id.,* and therefore the conduct sanctioned by the memorandum likely exceeded any valid statutory authority provided to the relevant judicial officers to order records sealed. Consequently, this Court's abstention analysis focused squarely on conduct of court administrators that "exceeded the authorization of court orders." *Id.* at 100-102 (holding that "the most important difference between this case and one in which *Pullman* abstention [(as set forth in *R.R. Comm'n v. Pullman Co.*, 312 U.S. 496 (1941)] would be appropriate is that . . . there is no applicable state statute," and that the state proceeding the defendants claim could implicate *Younger* abstention focused on "the constitutionality of a particular statute," whereas the case before the Court did not). This Court ultimately remanded the case to the district court to, among other things, develop a clearer record.

Here, on the other hand, CNS does not challenge an unofficial memorandum stating court policy or administrative guidance, but, rather, a carefully promulgated framework of rules, the genesis of which arises from the VSC's and the Vermont State Legislature's constitutionally and inherent authority. Unlike in *Hartford*

18

*Courant*, it cannot be said that the state court rules at issue arose from an unofficial exercise of state authority, cloaked in secrecy. The distinction between unofficial and official state policy makes all the difference for the application of abstention doctrine: a federal court's interests in avoiding intrusion in state court systems are necessarily greater where, as here, the intrusion seeks to enjoin constitutionally authorized rulemaking. The state policy in *Hartford Courant* did not rise to that level and, consequently, the holding in that case does not control.[11]

The Fourth and Ninth Circuit's respective decisions to reject abstention arguments in *Courthouse News Service v. Schaefer*, 2 F.4th 318 (4th Cir. 2021), and *Courthouse News Service v. Planet*, 750 F.3d 776 (9th Cir. 2014), are also distinguishable. As in *Hartford Courant*, the courts in both of those cases involved challenges to local clerk or administrator policies, not court rules promulgated by the highest state court in the exercise of its constitutional authority to oversee the state judicial system.[12]

---

[11] Moreover, *Hartford Courant* also did not discuss or apply *O'Shea* and predates this Court's decisions in *Kaufman* and *Disability Rights*, which did.

[12] The District Court described a case from the Southern District of New York, *Courthouse News Serv. v. Tingling*, No. 16-CV-8742, 2016 WL 8505086, at *1 (S.D.N.Y. Dec. 16, 2016), as "strikingly similar", *see* R.A. 536, however, the practice challenged by CNS in that case was the clerk's interpretation of a rule, N.Y. Ct. R. 202.5 (McKinney), adopted by the chief administrator of the courts pursuant to authority delegated to the chief administrator by statute, *see id.* Adopting Order; *see also* N.Y. C.P.L.R. 2102 (McKinney), and not a practice required by a rule

Finally, the conclusion that abstention is appropriate finds strong support from *Courthouse News Service v. Brown*. In that case, in which CNS also sought instantaneous public access to civil complaints filed in state courts, the Seventh Circuit determined that, although traditional abstention doctrines were "not a perfect fit," 908 F.3d at 1071, abstention was required nonetheless because the principles of federalism and comity underlying such doctrines require such a challenge to be heard first in state court. *See* 908 F.3d at 1065-66, 1075. The court succinctly stated that "it is important for federal courts to have 'a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.'" *Id.* at 1073 (quoting *SKS & Assocs. v. Dart*, 619 F.3d 674, 676 (7th Cir. 2010)). It found this "principle of comity," namely, "the assumption that state courts are co-equal to the federal courts and are fully capable of respecting and protecting . . . First Amendment rights," to be determinative. *Id.* at 1074. The Seventh Circuit therefore held that "[i]nitial adjudication of this dispute in the federal court would run contrary to . . . considerations of equity, comity and federalism."

---

promulgated pursuant to a state court's *constitutional* rulemaking authority, as is the case in Vermont.

*Id.* at 1075. As the Seventh Circuit concluded in *Brown*, abstention is appropriate in the present case.

### C. The tenets of appropriate federal-state relations and sound judicial administration strongly counsel in favor of judicial restraint in this case.

As the Supreme Court has noted, "[c]ooperation and comity, not competition and conflict, are essential to the federal design." *Kowalski v. Tesmer*, 543 U.S. 125, 133 (2004). Here, CNS has asked a federal court to supplant court rules established by the VSC and the Vermont State Legislature through a comprehensive rulemaking process with rules created through federal court litigation. The effect of the District Court's grant of CNS's request has been, and, if affirmed by this Court, will continue to be, two-fold: First, it disregards the balance between federal and state courts, which are presumed to be co-equal with respect to their respective abilities to guarantee persons' federal rights. *See Diamond "D" Const. Corp.*, 282 F.3d at 198 ("giving the respect to our co-equal sovereigns that principles of 'Our Federalism' demand, we generally prohibit federal courts from intervening" in matters of federal constitutional rights (quoting *Younger*, 401 U.S. at 44)). Second, it will have a significant and detrimental effect on the VSC's ability to efficiently and effectively manage the operations of the Vermont court system using its constitutionally provided rulemaking authority, which rulemaking process allows the VSC and the

Vermont State Legislature to consider and address the specific needs of the Vermont public.

With respect to the balance that state and federal courts currently enjoy, there exists an assumption that "a state proceeding provides an adequate forum for the vindication of federal constitutional rights," *Cullen v. Fliegner*, 18 F.3d 96, 103 (2d. Cir. 1994) (citing *Kugler v. Helfant*, 421 U.S. 117, 124 (1975)). This is certainly true in Vermont state courts, where the fair and efficient adjudication of claims alleging violations of litigants' civil rights—including cases involving public access to court records brought under the auspices of the First Amendment—take place on a regular basis. *See, e.g.*, *In re Essex Search Warrants*, 2012 VT 92, ¶ 1, 192 Vt. 559, 60 A.3d 707 (2012) (reversing trial court decision and allowing release of unredacted search warrants related to a criminal investigation); *State v. Densmore*, 160 Vt. 131, 131, 624 A.2d 1138 (1993) (holding district court's order denying access to defendant's psychosexual evaluation violated publishing company's First Amendment right of access to criminal proceedings); *State v. Schaefer*, 157 Vt. 339, 339–42, 599 A.2d 337 (1991) (holding district court's orders sealing affidavits of probable cause, partially closing a hearing on a motion to suppress, and prohibiting all law enforcement officers and all attorneys associated with the case from making any public statements about the criminal case violated public's First Amendment rights); *see also State v. Van Buren*, 2018 VT 95, ¶ 1, 210 Vt. 293, 214 A.3d 791

22

(2019), as supplemented (June 7, 2019) (holding statute banning disclosure of nonconsensual pornography does not violate First Amendment); *Kimbell v. Hooper*, 164 Vt. 80, 82, 665 A.2d 44 (1995) (holding state lobbying disclosure law not so vague or overbroad as to violate First Amendment). Given this established assumption of co-equality, and taken together with the state's strong interests in resolving the concerns arising from this case (and as described in more detail below), it is the Vermont Judiciary that is in the best position to adjudicate CNS's concerns in a manner that both appropriately protects the public's (including CNS's) First Amendment rights to access court records and carefully considers the rights of individuals who may be harmed by inadvertent disclosure of their protected sensitive or personal information via the Vermont state court system. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) ("the court must balance competing considerations against" the presumption of public access to court records, including "the privacy interests of those resisting disclosure" (quotation marks and citations omitted)).

Affirming the District Court's order will unalterably interfere with the VSC's constitutional authority to manage its own affairs through the rulemaking process, and more particularly, will restrict its use of the rulemaking process to facilitate the implementation of the extremely complex transition of Vermont courts' paper-filing process to one that will be almost exclusively electronic. This transition—which

23

began during an unprecedented pandemic—has been carefully orchestrated by the VSC, involving guidance from stakeholders intimately familiar with the internal administrative workings of the state courts, the considerations of the Vermont State Legislature, and the direct input of the public itself (through written comments on the proposed rules, and participation during public hearings held by the VSC's rules committees).  Furthermore, to prepare for its technological transformation, the VSC established core and extended project teams and working groups, and hired technology consultants to study the challenges and develop solutions that would allow the Vermont courts to do more for its citizens.[13]  That process took into account the myriad, interwoven policy and technological issues, such as certain Vermont-specific litigants' needs, varying court caseloads and resources, funding, government relations, and other practical issues involved in running the Vermont state court system.

The District Court's order has displaced priorities established and solutions developed by the VSC and destabilized the courts' intentionally chosen operational framework; and the compounding nature of the impacts of that order is just

---

[13] *See generally Next Generation Court Case Management System*, VT. JUDICIARY, https://www.vermontjudiciary.org/about-vermont-judiciary/next-generation-court-case-management-system#:~:text=The%20Vermont%20Judiciary%2C%20recognizing%20that,System%20(NG%2DCMS) (last visited May 6, 2022) (providing the history of Vermont's Next Generation Court Case Management System ("NG CMS")); *see also* Committee Meeting Minutes *supra* note 8.

24

beginning to be understood by the state court system. Like many other courts facing the obsolescence of existing technological capabilities and the need to improve public service without increasing the burden on taxpayers, the Vermont Judiciary undertook a thorough assessment of its systems and imagined a more efficient future. After many years of documenting requirements, wrestling with process questions, learning about the functionality, limitations, and costs of solutions, and selecting and working with a technology vendor, the Vermont Judiciary began rolling out its new Case Management System ("CMS"), which connected to an efiling interface ("File and Serve" or "OFS"), owned by Tyler Technologies ("Tyler"), in early 2020.[14]

Given the many steps required at case initiation,[15] including the daunting task of knowing which court records are designated confidential and inaccessible by statute, other law or court rule, and the inexperience of filers, especially with a new

---

[14] *See* Patricia Gabel, *NG CMS Update* (February 2020), https://www.vermont judiciary.org/sites/default/files/documents/February%202020%20NG-CMS% 20Newsletter.pdf.

[15] One need only skim the instructions in any of Tyler's Odyssey File and Serve User Guides (available at https://www.vermontjudiciary.org/about-vermont-judiciary/electronic-access/electronic-filing) to get a sense of the complexity involved in the efiling system. Notably, at case initiation, filers must choose a Court Location, General Category, a Case Type, a Sub-case type, a Filing type, and a Document code. *See* Guide, *infra* note 16, at 3-5. Additionally, filers are expected to understand the rules related to nonpublic information, omit or redact confidential information, and then select the correct confidentiality designation. *See Vermont eFiling General Policy and Procedure Guide* at 7-8 (April 2021), https://www.vermontjudiciary.org/sites/default/files/documents/VERMONT%20O FS%20Policy%20and%20Procedure%20GUIDE%20v3%204-21.pdf.

system, dealing with filer mistakes has always been part of the equation.  Through a robust fact gathering and deliberative process, the VSC determined most errors could be mitigated through a pre-acceptance/pre-access review process that occurred after submission by filers to the Tyler OFS and before acceptance by the courts into the Judiciary's CMS.[16]  Following the roll-out of the new system in early 2020, the clerks undertook all necessary reviews and verified existing party identity when incoming documents were held in the OFS.  Then, the clerks either rejected the documents, sending them back to the filer; or allowed the filings into the CMS.

Now, under the federal court's mandate, clerks must wait until *after* invalid and defective documents are automatically transferred from the OFS into the CMS to identify parties and correct mistakes.  Specifically, to comply with the District Court's order, the Vermont courts were forced to enable an auto-accept process that allows documents to flow into the CMS prior to human review and, as a result, court staff must navigate two different work flows (one in the OFS and the other in the CMS) and use a multi-step process[17] to meet state law requirements, safeguard

---

[16] This existing Tyler configuration was chosen to support the VSC's determination that the courts could not rely solely on filers or the technology to protect nonpublic information and that documents must be reviewed by court staff prior to acceptance into the CMS and public access. *See* Committee Minutes *supra* note 8.

[17] While clerks are still required to comply with state law and VRPACR Rule 7(a)(3)(4), they can no longer process all case types prior to admittance into the CMS due to the District Court's order.  Instead, for each invalid, unsigned, or otherwise

26

confidential information, and prevent corruption of the CMS.  Moreover, clerks must search within the CMS to match parties in new civil case filings to existing parties and merge them to ensure that Vermont's party-based case processing may continue unimpeded.

Furthermore, because the underlying efiling fee structure was premised on pre-acceptance party identification, hundreds of filers were, and more will be, erroneously re-assessed the $14 charge by Tyler because of the auto-accept process that allows civil documents to bypass a vital party-verification process and leads to the creation of duplicate records for the same party.  *See* Memorandum from Vermont State Court Administrator to Members of the Vermont Bar (May 6, 2022), https://www.vermontjudiciary.org/sites/default/files/documents/Memo%20to%20Bar%20-%20May%206%2C%202022%20-%20Notice%20Regarding%20Refund%20for%20Duplicative%20Efiling%20Fee.pdf; *Court Information: Vermont File & Serve Site*, TYLER TECHS., https://vermont.tylerhost.net/ofsweb (last visited May 6, 2022) (providing notice of

---

defective civil complaint that has been placed into the CMS, clerks must send instructions to remove the confidential information and refile a corrected pleading. Clerks also must redact portions of or mark documents so that nonpublic information is no longer being displayed on the public portal and then later process the second filing. *See Civil Division and Small Claims E-Filing Guide* at 3, 8 (December 2021) ("Guide"), https://www.vermontjudiciary.org/sites/default/files/documents/CIVIL%20OFS%20FILER%20GUIDE%2012-21%20updated.pdf.

double-charging to public).  Although efiling fees are charged by and, therefore, refunds are issued by Tyler, court staff must verify and report errors, and respond to questions from the public about the status of refunds.[18]  *See id.*

The unnecessary diversion of clerk time has created inefficiencies, which have made illusory the promise that technology would lead to improved customer service. And, Vermont is just at the beginning of this journey.

For these reasons, "anxious though [federal courts] may be to vindicate and protect federal rights and federal interests," *Younger*, 401 U.S. at 44, "[i]t is particularly appropriate for the federal courts to step back in the first instance as the state courts continue to transition to electronic filing and, like many courts across the country, are working through the associated implementation challenges and resource limitations," *Brown*, 908 F.3d at 1074.

---

[18] The timing of this mischarging-impact is especially unfortunate considering concerns raised by the Vermont State Legislature and Bar Association soon after the launch of efiling and the VSC's efforts in negotiating this particular fee arrangement as the solution to those concerns. *See* Kim Velk, *Per Filing E-Filing Fee Eliminated*, VT. BAR ASS'N. (Apr. 10, 2021), https://www.vtbar.org/per-filing-e-filing-fee-eliminated/; Guide *supra* note 16, at 3; *Vermont Judiciary Announces New Fee Structure for eFiling*, VT. JUDICIARY (Mar. 31, 2021), https://www.vermontjudiciary.org/news/vermont-judiciary-announces-new-fee-structure-efiling; *Electronic Filing*, VT. JUDICIARY https://www.vermontjudiciary .org/about-vermont-judiciary/electronic-access/electronic-filing (last visited May 6, 2021).

## CONCLUSION

Abstention is appropriate and necessary in this case. *See Harrison v. Nat'l Ass'n for the Advancement of Colored People*, 360 U.S. 167, 176 (1959) (abstention avoids "unnecessary interference by the federal courts with proper and validly administered state concerns"). While CNS seeks to establish a new right of instantaneous access to civil complaints under the First Amendment, the federal courts are facing a wave of state court record access litigation. Such challenges to state judiciaries' efforts to establish e-filing rules that maintain the integrity of the case management process underlying an efficient and impartial system of civil dispute resolution must be resolved in the first instance in the state courts, in conformity with the principles of equity, comity and federalism. CCJ respectfully urges the Court to invoke the doctrine of abstention and remand this case to the District Court so that it may vacate its order and dismiss CNS's complaint.

Dated: May 9, 2022

/s/ Nolan L. Reichl
Nolan L. Reichl
Peter J. Guffin
Ariel A. Pardee
PIERCE ATWOOD LLP
254 Commercial Street
Portland, Maine 04101
(207) 791-1304
nreichl@pierceatwood.com

*Attorney for Amicus Curiae*
*Conference of Chief Justices*

Laura M. O'Hanlon
c/o Peter J. Guffin
PIERCE ATWOOD LLP
Merrill's Wharf
254 Commercial Street
Portland, ME 04101
207-318-5748

*Special Counsel for Amicus Curiae*
*Conference of Chief Justices*

## CERTIFICATE OF COMPLIANCE WITH RULE 32

This brief complies with the type-volume limitations of Fed. R. App. P. 32(g)(1), as it contains 6,997 words, excluding the parts of the brief exempted by Fed. R. App. 32(f).

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman size 14 font.

Dated: May 9, 2022

*/s/ Nolan L. Reichl*
Nolan L. Reichl
PIERCE ATWOOD LLP
254 Commercial Street
Portland, Maine 04101
(207) 791-1304
nreichl@pierceatwood.com

*Attorney for Amicus Curiae*
*Conference of Chief Justices*

31

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2022, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send the notification of such filing to all counsel of record.

Dated: May 9, 2022

*/s/ Nolan L. Reichl*
Nolan L. Reichl
PIERCE ATWOOD LLP
254 Commercial Street
Portland, Maine 04101
(207) 791-1304
nreichl@pierceatwood.com

*Attorney for Amicus Curiae*
*Conference of Chief Justices*