**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

**MOTION INFORMATION STATEMENT**

Docket Number(s): __21-3098__                                    Caption [use short title]

Motion for: __an Award of Appellate Attorneys'__            Courthouse News Service et al. v.

__Fees__                                                                      Corsones et al.

Set forth below precise, complete statement of relief sought:

Appellee Courthouse News Service is seeking
a determination that it is entitled to an award of
appellate attorneys' fees, and for a referral to
the district court to determine a reasonable
amount, or in the alternative 45 days to provide
evidence to this Court re: amount.

MOVING PARTY: __Courthouse News Service__          OPPOSING PARTY: __Teri Corsones et al.__

☐ Plaintiff          ☐ Defendant

☐ Appellant/Petitioner     ☑ Appellee/Respondent

MOVING ATTORNEY: __Matthew B.  Byrne__          OPPOSING ATTORNEY: __David McLean__

[name of attorney, with firm, address, phone number and e-mail]

Gravel & Shea PC                                        Office of the Attorney General

P.O. Box 369, Burlington, VT 05402-0369          109 State Street, Montpelier, VT  05609-1001

mbyrne@gravelshea.com (802) 658-0220          david.mclean@vermont.gov (802) 828-1300

Court- Judge/ Agency appealed from: __U.S. District Court Vermont, Judge Christina Reiss__

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes  ☐ No (explain): _____

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has this request for relief been made below?  ☐ Yes  ☐ No
Has this relief been previously sought in this court?  ☐ Yes  ☐ No

Requested return date and explanation  of emergency: _____

Opposing counsel's position on motion:
☑ Unopposed  ☐ Opposed  ☐ Don't Know
Does opposing counsel intend to file  a response:
☐ Yes  ☐ No  ☑ Don't Know

Is the oral argument on motion requested?  ☐ Yes  ☑ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?  ☑ Yes  ☐ No  If yes, enter date: __4/10/2023__

Signature  of Moving Attorney:

_____  Date: __3/25/2025__          Service : ☑ Electronic  ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

# 21-3098-CV

## United States Court of Appeals

*for the*

## Second Circuit

COURTHOUSE NEWS SERVICE, VERMONT PRESS ASSOCIATION, INC.,
NEW ENGLAND FIRST AMENDMENT COALITION, GRAY MEDIA
GROUP, INC, DBA WCAX-TV, GANNETT VERMONT PUBLISHING, INC.,
DBA Burlington Free Press, SAMPLE NEWS GROUP, LLC, DBA Barre-
Montpelier Times Argus, DBA Rutland Herald, VERMONT JOURNALISM
TRUST, LTD., VTDIGGER, a project of Vermont Journalism Trust Ltd., DA
CAPO PUBLISHING, INC., DBA Seven Days, VERMONT COMMUNITY
NEWSPAPER GROUP, LLC, DBA Stowe Reporter, News & Citizen, South
Burlington Other Paper, Shelburne News, and The Citizen,

*Plaintiffs-Appellees,*

*(For Continuation of Caption See Inside Cover)*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF VERMONT (BURLINGTON)

## MOTION OF PLAINTIFF-APPELLEE COURTHOUSE NEWS SERVICE FOR AN AWARD OF APPELLATE ATTORNEYS' FEES

MATTHEW B. BYRNE
GRAVEL & SHEA PC
76 St. Paul Street, 7th Floor
P.O Box 369
Burlington, Vermont 05402
(802) 658-0220

ROGER R. MYERS
BRYAN CAVE LEIGHTON PAISNER LLP
3 Embarcadero Center, 7th Floor
San Francisco, California 94111
(415) 675-3400

*Attorneys for Plaintiffs-Appellees*

 (800) 4-APPEAL • (379785)

– v. –

TERI CORSONES in her official capacity as the State Court Administrator of the
Supreme Court of the State of Vermont, AMANDA STITES, in her official
capacity as Clerk of Court for Addison, Bennington, and Rutland Counties,
MARGARET VILLENEUVE, in her official capacity as Clerk of Court for
Caledonia, Essex, Orleans, and Washington Counties, CHRISTINE BROCK,
in her official capacity as Clerk of Court for Chittenden County, GAYE
PAQUETTE, in her official capacity as Clerk of Court for Franklin, Grand Isle,
and Lamoille Counties, ANNE DAMONE, in her official capacity as Clerk of
Court for Orange, Windham, and Windsor Counties,

*Defendants-Appellants.*

Pursuant to 42 U.S.C. § 1988, Federal Rule of Appellate Procedure 27, and Local Rule 27.1, Plaintiff-Appellee Courthouse News Service ("CNS") respectfully moves for a determination that it is entitled to an award of attorneys' fees incurred in connection with the appeal of this 42 U.S.C. § 1983 action, and for this Court to refer to the district court the determination of a reasonable amount.[1]

Alternatively, to the extent this Court prefers to determine the amount of fees, CNS respectfully requests 45 days from the date of the Court's order on this motion in which to file evidentiary materials and supporting memoranda establishing the amount of fees it incurred in connection with this appeal.

## BACKGROUND

This appeal involves a constitutional challenge pursuant to 42 U.S.C. § 1983 and the First Amendment by Appellees (Plaintiffs below), challenging unconstitutional delays in public and press access in the Superior Courts of Vermont to newly electronically filed non-confidential civil complaints.

Following an injunction hearing, which was consolidated with a trial on the merits, on November 19, 2021, the United States District Court for the District of Vermont ruled that Appellants' policy of delaying access violated Appellees' First

---

[1] Because CNS paid Plaintiffs' attorneys' fees and expenses incurred in this matter, only CNS brings the instant motion. The same is true of its December 20, 2021, motion for fees and costs in the district court. *See* District of Vermont Case No. 2:21-cv-000132, ECF 67 at 6, ECF 67-1 at 2.

Amendment rights, and it issued a permanent injunction barring Appellants from

delaying release to the public of newly filed complaints pending review by court

staff.  ECF 2.  Judgment was entered on November 22, 2021.  ECF 3.

On December 20, 2021, CNS filed a motion for attorneys' fees and non-

taxable costs in the district court pursuant to § 1988, seeking attorneys' fees and

costs incurred in that court through December 15, 2021.  Dist. Ct. ECF 67.[2]  The

following day, Appellants filed their notice of appeal.  ECF 1.  In the interest of

judicial and party efficiency, on December 23, 2021, the parties jointly stipulated

and requested that the district court "enter an order staying all proceedings

regarding costs and fees in this action until 30 days after a mandate issues from the

Second Circuit."  Dist. Ct. ECF 70 at 2.  The district court granted the parties'

stipulated request on December 27, 2021.  Dist. Ct. ECF 71.

On March 11, 2025, this Court affirmed the judgment of the district court to

the extent that it ruled that "Vermont's practice, as reflected in the trial court

evidence, violated Plaintiffs' First Amendment right of access to judicial

documents."  ECF 148-1 at 5 ("Opin.").  Although this Court recognized

Appellees' entitlement to injunctive relief, it vacated the injunction entered by the

district court for overbreadth, remanding the action to the district court for further

---

[2] All citations to "Dist. Ct. ECF" are to ECF numbers for the proceedings below, in
the United States District Court for the District of Vermont, Case No. 2:21-cv-
000132.  Citations for internal quotations are omitted unless otherwise noted.

proceedings consistent with its opinion, including "the parties' submissions addressed to the terms of the new injunction." Opin. at 47. This Court also indicated a declaratory judgment may be warranted while the district court considers the new injunction. *Id.*

Mandate has not yet issued. CNS believes that the district court could most efficiently resolve the issue of appellate attorneys' fees, along with the other matters the district court will take up following issuance of mandate. Counsel for Appellants has advised CNS it does not contest CNS' entitlement to fees under § 1988 (but would potentially contest the amount of fees) and does not oppose having the issue of appellate attorneys' fees decided by the district court. However, CNS files the instant motion in this Court now because (1) although this Circuit has held that district courts should normally decide the amount of a reasonable attorneys' fee under fee-shifting statutes, it has also held that in this Circuit, prevailing parties should file applications for appellate fees directly with the Court of Appeals in the first instance; and (2) to preclude any argument that such motion is untimely.[3]

---

[3] In an exercise of caution, CNS is filing this motion within the deadline to file its memorandum of costs pursuant to Federal Rule of Appellate Procedure 39, even though this Court has held that "Rule 39 'costs' do not include Section 1988 attorneys' fees." *Hines v. City of Albany*, 862 F.3d 215, 221 (2d Cir. 2017).

**CNS IS ENTITLED TO AN AWARD OF APPELLATE ATTORNEYS'**
**FEES UNDER 42 U.S.C. § 1988, THE AMOUNT OF WHICH COULD**
**MOST EFFICIENTLY BE DETERMINED BY THE DISTRICT COURT**

Under 42 U.S.C. § 1983, a "prevailing plaintiff '"should ordinarily recover

an attorney's fee unless special circumstances would render such an award

unjust."'" *Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983).[4]  The same rule

extends to attorneys' fees on appeal.  "Under 42 U.S.C. § 1988, the prevailing

party on an appeal in an action brought under § 1983 is entitled to an award of

attorneys fees in connection with the appeal."  *Hastings v. Maine-Endwell Cent.*

*Sch. Dist.*, 676 F.2d 893, 896 (2d Cir. 1982).

Appellees are clearly the "prevailing parties" for purposes of § 1988.  "A

party 'prevails' when a court conclusively resolves his claim by granting enduring

relief on the merits that alters the legal relationship between the parties."  *Lackey v.*

*Stinnie*, 604 U.S. --, 145 S. Ct. 659, 671 (Feb. 25, 2025).  A plaintiff need not win

every argument or issue for "prevailing party" status; it is sufficient if "the plaintiff

---

[4] In addition, and as CNS explained in its motion for attorneys' fees and costs for
the district court proceedings, which CNS filed in that court, "reasonable out-of-
pocket expenses incurred by the attorney and which are normally charged fee-
paying clients," including, *inter alia*, expert witness fees, are recoverable under 42
U.S.C. § 1988.  *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278,
283 (2d Cir. 1987); *Kuzma v. I.R.S.*, 821 F.2d 930, 933-34 (2d Cir. 1987).  *See*
Dist. Ct. ECF 67 at 14-16.  For purposes of this motion, references to attorneys'
fees also include these costs and expenses, but ***not*** the taxable costs required to be
included in a Bill of Costs pursuant to Federal Rule of Appellate Procedure 39 and
Local Rule 39.1.

has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit.'" *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989); *accord*, *e.g.*, *Hensley*, 461 U.S. at 433 ("A typical formulation is that 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'"). Rather, a plaintiff achieves prevailing party status where it "succeed[s] on the merits," *Lackey*, 145 S. Ct. at 668, such as "a judgment vindicating … First Amendment rights." *Texas State Teachers*, 489 U.S. at 793.

Appellees asserted one claim in this lawsuit – violation of the First Amendment and 42 U.S.C. § 1983 for delaying access to newly filed civil complaints until after the completion of administrative review and processing – and Appellees were successful on that claim. This Court found that Appellees have "a *presumptive* First Amendment right of access to newly filed complaints, which attaches upon a court's receipt of such complaints." Opin. at 13. It further found that, "with respect to the period examined in the trial evidence, … Defendants' pre-access review process … violated that right." *Id*. at 17. It rejected Appellants' abstention and mootness arguments. *Id*. at 40-47. It vacated the injunction entered by the district court as overbroad, remanding to the district court

to craft a "new injunction," and indicated a declaratory judgment would be warranted to protect Appellees' First Amendment rights in the interim.  *Id.* at 47.

This Circuit has directed that "[a]pplications for appellate fees in this Circuit should be filed directly with the Court of Appeals."  *Smith by Smith v. Bowen*, 867 F.2d 731, 736 (2d Cir. 1989) (citing *McCarthy v. Bowen*, 824 F.2d 182 (2d Cir. 1987)); *accord Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 369 F.3d 91, 96 (2d Cir. 2004) ("this Court … is the reviewing court for an application for fees to be awarded for the appeal").  However, it has also held that except in "unusual circumstances," where "questions are presented such as the amount of recovery, the extent to which a plaintiff is a prevailing party, and what if any adjustment is to be given for delay in payment, determination of a reasonable attorney's fee under the fee-shifting statutes should normally be decided by the district court in the first instance. … An appellate panel is simply not equipped to give proper consideration to the many-faceted factual disputes that may affect a claim for attorney's fees."  *Dague v. City of Burlington*, 976 F.2d 801, 804 (2d Cir. 1991) (citing *Smith* and *McCarthy* and noting that "[h]ere, as in those cases, the remaining fee issues have been initially presented to this court; we are determining simply that they should be referred to the district court for decision"); *Smith*, 867 F.2d at 736 n.3 (district court "assistance may sometimes be helpful with factual disputes concerning hours and rates"); *Porzig v. Dresdner, Kleinwort, Benson, N.*

6

*Am. LLC,* 497 F.3d 133, 144 (2d Cir. 2007) (noting that "although appellate courts may determine appellate fees, district courts are generally best suited to the task," and directing district court on remand to determine the amount of appellate fees) (citing *Dague*, 976 F.2d at 804-05).

CNS' application will present similar questions pertaining to the issue of appellate fees and costs, most notably "the amount of recovery." *Dague*, 976 F.2d at 804. This determination, in turn, will require an evidentiary showing. On remand, in addition to the matter of crafting new relief consistent with this Circuit's opinion, the district court will need to take up CNS' 2021 motion for attorneys' fees incurred in the district court, which is still pending per the parties' stipulation to stay proceedings on costs and fees pending appeal. That motion is not yet fully briefed; and given the passage of time and this Circuit's opinion, even CNS' moving papers will need to be updated and/or supplemented. Allowing the district court to also consider the question of appellate costs and fees at the same time, all stemming from a similar/overlapping evidentiary record, would allow all parties and the judiciary to conserve resources.

Efficient resolution of the attorneys' fees issues in this case is also important because "[p]revailing parties under Section 1988 are … entitled to recover a reasonable fee for preparing and defending a fee application." *Hines*, 862 F.3d at 223. The fees and costs incurred in preparing the memoranda and evidence to

7

allow the reviewing court to determine the amount of reasonable appellate fees and costs could be reduced if the parties litigate fees for the district court and appellate proceedings at the same time, and before a single tribunal.

Amassing the memoranda and evidence for a fee application necessarily takes time; and that is particularly true where, as here, a significant period has elapsed since this appeal was briefed. Accordingly, to the extent this Court prefers to determine the entitlement and amount of an award of fees and costs itself, without referring the matter to the district court, CNS respectfully requests 45 days from the date of the Court's order on this motion in which to file evidentiary materials on its request for attorneys' fees incurred in connection with this appeal, along with supporting legal memoranda.

Pursuant to Local Rule 27.1(b), counsel for CNS (1) has notified counsel for Appellants of its intent to bring this motion;[5] (2) counsel for Appellants has advised CNS that Appellants do not contest CNS' entitlement to fees under § 1988, and do not oppose having the district court determine the amount of fees, but may

---

[5] CNS has been advised by the Office of the Attorney General that Assistant Attorney General David Cassetty is now handling this case, and the position of opposing counsel is thus as communicated to CNS' counsel by Mr. Cassetty. However, because Mr. Cassetty has not yet entered an appearance in the Second Circuit, CNS' Form T-1080 lists David McLean of the Attorney General's Office as the opposing counsel in this action.

contest the amount of fees requested by CNS; and (3) whether Appellants' counsel intends to file a response to this motion depends on the contents of this motion.

## CONCLUSION

For the foregoing reasons, CNS respectfully requests that the Court grant its motion and enter an order (1) holding that Appellees are the prevailing parties for purposes of 42 U.S.C. § 1988, and (2) referring the matter to the district court for a determination on remand of the amount of reasonable fees CNS is entitled to recover. Alternatively, to the extent the Court prefers to determine the amount of an award of fees itself, CNS respectfully requests that the Court grant it 45 days from the date of the Court's order on this motion in which to file evidentiary materials and legal memoranda supporting its motion.

Dated: March 25, 2025            BRYAN CAVE LEIGHTON PAISNER LLP

By:  */s/ Roger R. Myers*
3 Embarcadero Center, 7th Floor
San Francisco, CA 94111
(415) 675-3400
roger.myers@bclplaw.com

GRAVEL & SHEA PC
Matthew B. Byrne
76 St. Paul Street, 7th Floor
P.O. Box 369
Burlington, VT 05402-0369
(802) 658-0200
mbyrne@gravelshea.com

*Attorneys for Plaintiffs-Appellees*

9

**CERTIFICATE OF COMPLIANCE**

This motion complies with the length limits of Fed. R. App. P.  27(d)(2) because this motion contains 2,202 words.  This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 14-point Times New Roman style.

Dated: March 25, 2025                    GRAVEL & SHEA PC

                                         By:  /s/ Matthew B. Byrne

                                         Matthew B. Byrne
                                         76 St. Paul Street, 7th Floor
                                         P.O. Box 369
                                         Burlington, VT 05402-0369
                                         (802) 658-0200
                                         mbyrne@gravelshea.com

616685582.1

**Exhibit**
**District Court Opinion**
**[FRAP 27(a)(2)(B)(iii)]**

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 NOV 19 PM 5: 08

CLERK

BY_____Law_____
DEPUTY CLERK

COURTHOUSE NEWS SERVICE;                         )
VERMONT PRESS ASSOCIATION, INC.;                 )
NEW ENGLAND FIRST AMENDMENT                      )
COALITION; GRAY MEDIA GROUP, INC.                )
d/b/a *WCAX-TV*; GANNETT VERMONT                 )
PUBLISHING, INC. d/b/a *Burlington Free*         )
*Press*; SAMPLE NEWS GROUP, LLC d/b/a            )
*Barre-Montpelier Times Argus* and *Rutland*     )
*Herald*; *VTDigger,* a project of the           )
VERMONT JOURNALISM TRUST, LTD.;                  )
VERMONT COMMUNITY NEWSPAPER                      )
GROUP, LLC d/b/a *Stowe Reporter,*               )
*News & Citizen, South Burlington Other*         )
*Paper, Shelburne News,* and *The Citizen*; and  )
DA CAPO PUBLISHING, INC.                         )
d/b/a *Seven Days*,                              )
                                                 )
          Plaintiffs,                            )
                                                 )
     v.                                          )          Case No. 2:21-cv-000132
                                                 )
PATRICIA GABEL, in her official capacity as      )
the State Court Administrator of the Supreme     )
Court of the State of Vermont; AMANDA            )
STITES, in her official capacity as Clerk of     )
Court for Addison, Bennington, and Rutland       )
Counties; MARGARET VILLENEUVE, in her            )
official capacity as Clerk of Court for          )
Caledonia, Essex, Orleans, and Washington        )
Counties; CHRISTINE BROCK, in her official       )
capacity as Clerk of Court for Chittenden        )
County; GAYE PAQUETTE, in her official           )
capacity as Clerk of Court for Franklin, Grand   )
Isle, and Lamoille Counties; and ANNE            )
DAMONE, in her official capacity as Clerk of     )
Court for Orange, Windham, and Windsor           )
Counties,                                        )
                                                 )
          Defendants.                            )

**OPINION AND ORDER DENYING AS MOOT PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION, DENYING DEFENDANTS' MOTION TO
DISMISS, GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
REQUEST FOR PERMANENT INJUNCTIVE RELIEF, AND
DENYING PLAINTIFFS' REQUEST FOR DECLARATORY RELIEF**
(Docs. 16, 26, & 43)

Plaintiffs Courthouse News Service; Vermont Press Association, Inc.; New
England First Amendment Coalition; Gray Media Group, Inc. d/b/a WCAX-TV; Gannett
Vermont Publishing, Inc. d/b/a Burlington Free Press; Sample News Group, LLC d/b/a
Barre-Montpelier Times Argus and Rutland Herald; VTDigger, a project of the Vermont
Journalism Trust, Ltd.; Vermont Community Newspaper Group, LLC d/b/a Stowe
Reporter, News & Citizen, South Burlington Other Paper, Shelburne News, and The
Citizen; and Da Capo Publishing, Inc. d/b/a Seven Days (collectively, "Plaintiffs") bring
this action under 42 U.S.C. § 1983 against Defendants Patricia Gabel, in her official
capacity as State Court Administrator of the Supreme Court of the State of Vermont;
Amanda Stites, in her official capacity as Clerk of Court for Addison, Bennington, and
Rutland Counties; Margaret Villeneuve, in her official capacity as Clerk of Court for
Caledonia, Essex, Orleans, and Washington Counties; Christine Brock, in her official
capacity as Clerk of Court for Chittenden County; Gaye Paquette, in her official capacity
as Clerk of Court for Franklin, Grand Isle, and Lamoille Counties; and Anne Damone, in
her official capacity as Clerk of Court for Orange, Windham, and Windsor Counties
(collectively, "Defendants").

Plaintiffs allege that Defendants' failure to make newly filed civil complaints
available to the public prior to Defendants' pre-access review process violates Plaintiffs'
First Amendment rights. Plaintiffs seek injunctive and declaratory relief and an award of
attorneys' fees under 42 U.S.C. § 1988.

## I.      Procedural Background.

Plaintiffs filed a complaint for injunctive and declaratory relief on May 20, 2021
and amended it on June 7, 2021. (Docs. 1 & 16.) The parties filed a Stipulation and
Proposed Order regarding a briefing schedule for a motion for preliminary injunction by

Plaintiffs and a motion to dismiss by Defendants, which the court adopted on July 8, 2021. (Doc. 25.) Plaintiffs moved for a preliminary injunction on July 12, 2021, seeking to enjoin Defendants from denying Plaintiffs access to newly filed civil complaints until after they were processed pursuant to the rules promulgated by the Vermont Supreme Court. (Doc. 26.) On August 18, 2021, Defendants filed a motion to dismiss (Doc. 43) and opposed Plaintiffs' motion for a preliminary injunction (Doc. 44). On September 24, 2021, Plaintiffs filed a reply in support of their motion for a preliminary injunction (Doc. 50) and a response in opposition to Defendants' motion to dismiss (Doc. 51). Defendants replied in support of their motion to dismiss on October 15, 2021. (Doc. 52.)

Pursuant to Federal Rule of Civil Procedure 65(a)(2), with the parties' consent, the court consolidated the hearing on the preliminary injunction with a trial on the merits. The consolidated hearing and trial were held on October 25, 2021. The parties stipulated to a trial without live witnesses, asking the court to make its factual findings based on the materials they submitted. Because there has been a trial on the merits, Plaintiffs' motion for preliminary injunction (Doc. 26) is DENIED AS MOOT.

On October 29, 2021, Defendants moved for leave to file a supplemental submission, which Plaintiffs opposed as inconsistent with the parties' stipulation.[1] The court granted leave in part "to the extent Defendants present new evidence regarding when newly filed complaints that are not made publicly available on the date of filing become accessible[,]" and denied it in part "to the extent it presents new arguments based on case law which predates the trial." (Doc. 60.) Plaintiffs responded to Defendants' supplemental submission on November 5, 2021, at which point the court took the pending motions under advisement. (Doc. 61.)

Plaintiffs are represented by William Hibsher, Esq., Jonathan E. Ginsberg, Esq., and Robert B. Hemley, Esq. Defendants are represented by Assistant Attorney General David Boyd.

---

[1] "[T]he parties' agreement to consolidate without live witnesses means the Court can reach the factual findings it thinks [are] appropriate based on the record before it[.]" (Doc. 57 at 55.)

II.     **Findings of Fact.**

Pursuant to Federal Rule of Civil Procedure 52(a)(1) and the parties' stipulation, the court makes the following findings of facts.

A.      **The Parties.**

1. With the exception of New England First Amendment Coalition, a regional group interested in protecting First Amendment freedoms, Plaintiffs are media companies that report on court proceedings in the Vermont Superior Courts and elsewhere.

2. Plaintiff Courthouse News Service ("CNS") is a nationwide news service which employs approximately 240 people, most of them editors and reporters, covering state and federal trial and appellate courts in all fifty states in the United States. It currently employs reporters who cover the state and federal trial and appellate courts of Vermont.

3. Plaintiff CNS offers a variety of publications, including its "New Litigation Reports," which contain original, staff-written summaries of significant new civil complaints. New Litigation Reports focus on general jurisdiction civil complaints against business institutions, public entities, prominent individuals, or other civil actions of interest to CNS subscribers. New Litigation Reports do not cover criminal or family law matters, nor do they include residential foreclosures or probate filings.

4. Among Plaintiff CNS's other publications are its two print newsletters and an electronic "Daily Brief" which cover published nationwide appellate rulings, including all U.S. Supreme Court and federal circuit decisions, as well as significant rulings from federal district courts, including the District of Vermont. In addition, Plaintiff CNS publishes a website featuring news reports and commentary, which functions much like a daily newspaper.

5. To prepare New Litigation Reports and identify new cases that may warrant coverage, Plaintiff CNS's reporters have traditionally visited their assigned courts to review all newly filed complaints in order to determine which ones are

newsworthy. However, as the federal courts and an increasing number of state courts are making court records available online, and in light of the ongoing COVID-19 pandemic, Plaintiff CNS also covers courts remotely through the Internet.

6. Reporters for the other media Plaintiffs also review newly filed civil complaints to identify cases that may be newsworthy. Any delay in the ability of a reporter to obtain and review a newly filed complaint necessarily creates a delay in the ability to inform subscribers and the public of the factual and legal allegations in those complaints.

7. Defendants are state officials responsible for the administration of the Vermont Superior Courts. The Vermont Superior Courts are comprised of fourteen county-based units.[2]

8. Vermont Superior Courts are the trial courts that hear the majority of civil actions.

9. Vermont Superior Court Clerks are responsible for, among other things, the administration of civil court records and the provision of public access to those records.

**B.    Transition to Odyssey Electronic Filings.**

10. From April 20, 2017 to March 2020, Plaintiffs were able to review newly filed paper complaints, including, in some cases, complaints that had yet to be docketed in the Vermont Superior Courts. Before providing complaints to the press or the public, court staff would complete a "quick file audit" to confirm the absence of confidential information or remove previously identified confidential information. (Doc. 50-3 at 3.)

11. In March 2020, the Vermont Judiciary implemented a new electronic case management system "Odyssey," which is hosted by a third-party vendor, Tyler Technologies, Inc.

---

[2] Addison, Bennington, Caledonia, Chittenden, Essex, Franklin, Grand Isle, Lamoille, Orange, Orleans, Rutland, Washington, Windham, and Windsor.

12. The Vermont Superior Courts transitioned to Odyssey's electronic filing system in three phases. The Orange, Windham, and Windsor units began the transition to electronic records in March 2020 and began accepting electronic filings in April 2020. The Addison, Bennington, Chittenden, and Rutland units began the transition to electronic records in September 2020 and began accepting electronic filings in October 2020. The Caledonia, Essex, Franklin, Grand Isle, Lamoille, Orleans, and Washington units began the transition to electronic records in February 2021 and began accepting electronic filings on March 15, 2021.

13. As of March 15, 2021, with limited exceptions, all documents filed in the Vermont Superior Courts are required to be electronically filed. *See* 2020 Vermont Rules for Electronic Filing Rule 3(a).

14. Public access to filings is available only at designated display terminals located in courthouses and judiciary offices during regular business hours. Each unit must have at least one public access terminal. Remote access to publicly accessible case records, except for criminal, family, or probate records, may be provided at the discretion of the Court Administrator.

15. During the rollout of Odyssey, the Vermont Superior Courts experienced COVID-19-related challenges including work restrictions, equipment shortages, training delays, and the reallocation of information technology professionals to tasks related to remote connectivity rather than electronic filing.

16. The Vermont Superior Courts continue to suffer a high employee attrition rate and continue to experience difficulties in recruiting necessary staff to assist in Odyssey's implementation as well as other court-related tasks.

   **C.    The Rules Authorizing the Pre-Access Review Process.**

17. The 2020 Vermont Rules for Electronic Filing ("V.R.E.F.") and Vermont Rules for Public Access to Court Records ("V.R.P.A.C.R.") control the process for electronic filing in the Vermont Superior Courts.

18. Under V.R.E.F. 5(b), the electronic filer must:

(1)    prepare and format the efiling in accordance with Rule 5(f) and (g), and Rule 7;

(2)    sign the efiling as provided in Rule 9;

(3)    provide a mailing address and email address on the documents electronically filed;

(4)    satisfy payment requirements of Rule 10;

(5)    take any actions required under Rule 7(a)(1) of V.R.P.A.C.R.;

(6)    certify that each document filed complies with V.R.P.A.C.R.; and

(7)    for initial filings, provide service contacts that will enable post-commencement service on the efiler and maintain updated contacts.

19. Under V.R.E.F. 5(d), Vermont Superior Court staff are required to perform the following processing:

(1)    Court Staff Review. Court staff will review all electronic filings for compliance with these rules and Rule 7(a)(1) of V.R.P.A.C.R.

(2)    Accepting or Rejecting a Filing. Court staff will electronically notify the efiler either that the efiling has been accepted or that it cannot be accepted until specified actions required under these rules have been taken.

(3)    Correcting an eFiling. An efiler may submit a corrected efiling within seven days after receiving the notification if the efiler follows the instructions for efiling a correction on the electronic filing system. The court may extend the time for correction for good cause. Court staff will accept a corrected efiling if all requirements of those rules and the instructions for correction have been met.

(4)    Filing Date. When an efiling has been accepted, the date and time of efiling for all purposes under the applicable rules of procedure are the date and time that the initial efiling was submitted if the corrected filing complied with the time limits in (d)(3).

(5)    Assigning Case Number. The electronic filing system will provide a case number for a new case filing that has been accepted in the acceptance notification. The assigned case number must appear on all subsequent efilings pertaining to the case.

20. Under V.R.P.A.C.R. 6(b), the public "does not have access" to certain court records, including the following:

(1)    Records which by statute, court rule, or other source of law are designated confidential or to which access is prohibited by a similar

term. An appendix to this rule lists all statutes and court rules
containing a prohibition or restriction on public access, existing on
the date of promulgation of this rule, and a summary of the extent
and terms of the prohibition or restriction. Annually before January 1
of each year the Court Administrator will update the list in the
appendix.

. . .

(14)   The following personally identifying data elements filed in a case
record that is otherwise publicly accessible under these rules:

    (i)     A social security number;

    (ii)    A passport number;

    (iii)   A taxpayer identification number;

    (iv)   A financial account number, including a credit or debit card
            number; or

    (v)    In a criminal case, the name of a child alleged to be a victim.
            In lieu of a social security, passport, taxpayer identification or
            financial account number, the filer may include the last four
            digits of that number. In lieu of the name of a child victim,
            the filer may include the initials of the first and last name of
            the child.

21. Although none of the Vermont Judiciary's electronic filing rules clearly state that
the public shall not have access to a newly filed complaint until a pre-access
review process is completed, Defendants contend that the rules, when read
collectively, authorize a process which entitles the Vermont Superior Courts to
withhold access to newly filed complaints until a manual review for certain
information takes place. The rules impose no deadlines or other temporal restraints
on how long the pre-access review process may take, how it is staffed, or impose
any consequences if the pre-access review process is unduly delayed.

22. Plaintiffs contend that as of July 1, 2021, Vermont was the only state in the nation
that requires court clerks to independently review electronic court filings in a non-
public queue for confidential information before those filings are accessible to the
public. Defendants offered no evidence to rebut that contention.

**D. Protection of Confidential Records and Consequences of Noncompliance.**

23. V.R.P.A.C.R. 2(e) states: "To the extent reasonably practicable, restriction of access to confidential information is implemented in a manner that does not restrict access to any portion of the record that is not confidential."

24. V.R.P.A.C.R. 7(a)(1) imposes the following responsibilities on filers:

    (A) In General. It is the responsibility of the filer of a case record, whether in physical or electronic form, to determine whether all or part of the record being filed is not publicly accessible.

    (B) Certifying Compliance. The filer must certify that the filer has reviewed the case record, and that the filing specifies the nonpublic records and protects those records from disclosure to the public consistent with these rules. The certificate must detail any actions taken to comply with these rules and the reasons for the actions.

    (C) Separating Nonpublic Records in Public Files. If the record is not filed in a type of case that is closed to the public by statute, the filer must separate the part of the record that is subject to public access from the part that is not subject to public access by redaction or other similar method. The filer may separately file the omitted or redacted part of the record or may additionally file a separate complete record.

    (D) Identifying Nonpublic Records. The filer of a record that is not publicly accessible under these rules or under statute must identify the record as not publicly accessible at the time of filing. After acceptance of the filing, court staff will place that document, or any other document not publicly accessible, in the section of the electronic or physical file of the case that is not publicly accessible.

25. V.R.P.A.C.R. 7(a)(3) and (4) set forth the following court staff responsibilities and powers:

    (3) Responsibility of Court Staff When Document is Filed. The Court Administrator will establish the procedures for staff to discharge the record custodian's responsibility to provide public and special access to records as provided in these rules and to implement exceptions to public access established by these rules and by statute. If staff determine that a filing does not fully comply with these rules, including with respect to one or more personal identifiers, staff must take an action specified in paragraph (4). If a court staff person or judicial officer discovers that a case record that is publicly accessible

9

may be in that status in violation of these rules, the staff or officer must act to temporarily restrict public access to the record and notify the Court Administrator. If the Court Administrator determines that public access to the record is not authorized under these rules, the Court Administrator will direct that the record be removed from public access. The Court Administrator may direct that the record be redacted or otherwise modified to allow public access to parts that are publicly accessible under these rules. If the record was filed by or on behalf of a party or another person who is not court staff or a judicial officer, the Court Administrator may direct that the filer make the record compliant with these rules within a specified time. If the filer provides a compliant filing on or before the specified time limit, the filing date will be the date of the original filing. Otherwise, the filing date will be the date of the compliant filing. The Court Administrator may appoint a designee to discharge the Court Administrator's responsibility under this rule.

(4)   Actions When a Filing is Noncompliant with Rules.

    (A)   The staff person who reviews the filing may:

        (i)   Change the public-access status or redact the filing to comply with these rules; or

        (ii)   Reject the filing until it is made compliant with these rules and specify the time limit to do so.

    (B)   In addition, the staff person may refer the matter to an assigned judge who, after notice and hearing, may:

        (i)   Impose any sanction authorized by V.R.C.P. 11(c), regardless of whether that rule is otherwise applicable to the proceeding involved;

        (ii)   Reference the matter to the Professional Responsibility Program if the court finds that there is probable cause to conclude that a lawyer has violated Rule 3.4(c) of the Rules of Professional Conduct; and/or

        (iii)   If the court finds a violation of these rules occurred and excusable neglect is not present, order that the date of the corrected filing is the date of filing for all purposes; or remedial action appropriate to the circumstances.

26. "For case records, the rules recognize that it is the responsibility of both filers of case records and the Judiciary to protect confidentiality and privacy where public

access is restricted by such requirements." V.R.P.A.C.R. 3(b). The Judiciary is required to "take reasonable steps to comply with these rules." *Id.* A non-compliant filer is subject to penalties set forth in V.R.P.A.C.R. 7(a)(4), including sanctions and referral to the bar for violation of the Rules of Professional Conduct.

27. From the transition to electronic filing through September 3, 2021, the Vermont Superior Courts rejected sixty-six proposed filings across all filing types under rejection code RR11—Public Documents Containing Nonpublic Information and seventy-two additional proposed filings across all filing types with comments indicating rejection was related to nonpublic information. Nineteen of those were civil filings and four were listed as confidential by the filer in the Filing Code Description. Of those four, one was an unredacted check and three were exhibits to two civil complaints. (Doc. 50-3 at 4-5.)

28. Defendants' pre-access review for confidential information has thus led to a rejection of three exhibits related to two out of 4,156 newly filed civil complaints during Odyssey's implementation. This means that the pre-access review process for confidential information identified a violation in only 0.048% of newly filed complaints.

   **E.    Delays Occasioned by the Pre-Access Review Process.**

29. After they are electronically filed in the Vermont Superior Courts, newly filed complaints are placed in an electronic review queue which is not accessible to the public. A clerk checks for a signature, unredacted personally identifying information exempt from disclosure, and comments left by the filer. The clerk verifies that the complaint is correctly designated as public, confidential, or sealed; that the right filing codes are selected; and that the filing fee and case type selected are correct. The clerk then accepts or rejects the filing. Accepted nonconfidential filings become available for public viewing only after this review process is complete.

30. The pre-access review process for new civil filings typically takes approximately twenty minutes to complete. Odyssey's software performs a verification process

that duplicates the clerk's pre-access review except for the review for confidential information, which must be undertaken manually.

31. Because Defendants provide no evidence that their ministerial review of a newly filed complaint (for signature, fee payment, coding, etc.) takes twenty minutes, nor would it be reasonable to make such a claim, it appears that the majority of the pre-access review process is devoted to a manual review of the complaint for confidential information. This is also the only portion of the pre-access review process which is not duplicated by Odyssey's software.

32. If a filing is accepted, it becomes available electronically for public viewing upon acceptance.

33. But for the Vermont Superior Courts' pre-access review process, newly filed complaints could be made accessible to the public immediately upon filing.

34. Since the implementation of Odyssey, delays in access to newly filed complaints have been pervasive throughout the Vermont Superior Courts. Of the 4,156 newly filed civil complaints filed in the fourteen Vermont Superior Courts from the first implementation of Odyssey until August 6, 2021 (the "Designated Period"), on average:

   a. 54.8% were made available to the public on the same day as filing;

   b. 22.6% were made available to the public one day after filing;

   c. 4.6% were made available to the public two days after filing;

   d. 6.7% were made available to the public three days after filing; and

   e. 11.4% were made available to the public four or more days after filing.

35. On a weekly basis, the percentage of newly filed civil complaints made available on the same day as filing ranged, on average, from a low of 0% for weeks starting May 3, 2020; May 17, 2020; and October 4, 2020, to a high of 91.7% for the week starting November 22, 2020.

36. Among the fourteen Vermont Superior Courts during the Designated Period, the percentage of newly filed civil complaints made available on the same day as filing ranged from a low of 3.8% to a high of 81.6%. Specifically:

a. In the Addison Unit, 33.9% were made available to the public on the same day as filing;

b. In the Bennington Unit, 51.0% were made available to the public on the same day as filing;

c. In the Caledonia Unit, 11.1% were made available to the public on the same day as filing;

d. In the Chittenden Unit, 61.1% were made available to the public on the same day as filing;

e. In the Essex Unit, 3.8% were made available to the public on the same day as filing;

f. In the Franklin Unit, 58.2% were made available to the public on the same day as filing;

g. In the Grand Isle Unit, 53.1% were made available to the public on the same day as filing;

h. In the Lamoille Unit, 50.7% were made available to the public on the same day as filing;

i. In the Orange Unit, 39.5% were made available to the public on the same day as filing;

j. In the Orleans Unit, 28.0% were made available to the public on the same day as filing;

k. In the Rutland Unit, 64.9% were made available to the public on the same day as filing;

l. In the Washington Unit, 67.6% were made available to the public on the same day as filing;

m. In the Windham Unit, 81.6% were made available to the public on the same day as filing; and

n. In the Windsor Unit, 37.8% were made available to the public on the same day as filing.

37. The Vermont Superior Courts' pre-access review process results in delay that
varies significantly between court units and within each court unit:

**Availability for Each of the 14 Vermont Superior Court Units - In Calendar Days**

| Location | Same Day Availability | Next Day Availability | 2+ Day Availability | Total New Complaints |
|---|---|---|---|---|
| Addison Unit | 74% | 26% | 0% | 35 |
| Bennington Unit | 43% | 23% | 35% | 40 |
| Caledonia Unit | 87% | 10% | 3% | 30 |
| Chittenden Unit | 76% | 17% | 7% | 167 |
| Essex Unit | 50% | 50% | 0% | 4 |
| Franklin Unit | 69% | 26% | 5% | 62 |
| Grand Isle Unit | 50% | 25% | 25% | 8 |
| Lamoille Unit | 58% | 15% | 27% | 48 |
| Orange Unit | 63% | 26% | 11% | 27 |
| Orleans Unit | 72% | 21% | 7% | 29 |
| Rutland Unit | 67% | 28% | 6% | 90 |
| Washington Unit | 62% | 19% | 19% | 104 |
| Windham Unit | 71% | 9% | 20% | 70 |
| Windsor Unit | 54% | 26% | 20% | 54 |
| **All Units** | **67%** | **20%** | **13%** | **768** |

**Availability for Each of the 14 Vermont Superior Court Units - In Work Days**

| Location | Same Day Availability | Next Day Availability | 2+ Day Availability | Total New Complaints |
|---|---|---|---|---|
| Addison Unit | 83% | 17% | 0% | 35 |
| Bennington Unit | 50% | 35% | 15% | 40 |
| Caledonia Unit | 90% | 10% | 0% | 30 |
| Chittenden Unit | 84% | 14% | 1% | 167 |
| Essex Unit | 75% | 25% | 0% | 4 |
| Franklin Unit | 74% | 26% | 0% | 62 |
| Grand Isle Unit | 63% | 38% | 0% | 8 |
| Lamoille Unit | 83% | 10% | 6% | 48 |
| Orange Unit | 81% | 15% | 4% | 27 |
| Orleans Unit | 79% | 21% | 0% | 29 |
| Rutland Unit | 70% | 28% | 2% | 90 |
| Washington Unit | 58% | 31% | 12% | 104 |
| Windham Unit | 76% | 10% | 14% | 70 |
| Windsor Unit | 61% | 30% | 9% | 54 |
| **All Units** | **74%** | **21%** | **5%** | **768** |

### F. The Centralization Process.

38. The Vermont Superior Courts are in the process of centralizing the pre-access
review process on a division-by-division basis as part of a pilot approach that will
be evaluated and adjusted as necessary before becoming permanent. Centralized
review for five Vermont Superior Court units began in July of 2021 but staffing
constraints have not allowed for the other units to be centralized. Defendants' goal
is to have the civil pilot program cover the remaining units in October of 2021 and
make it permanent by the end of 2021. (Docs. 44-14 and 55.)

**G. Whether Media Coverage has been Impaired by Defendants' Pre-access Review Process and Whether Plaintiffs are Entitled to Special Access.**

39. Defendants argue that Plaintiffs fail to prove that their ability to provide timely coverage of court cases has been impaired by Defendants' pre-access review process. They ask the court to use Plaintiff CNS's publication dates to determine whether there has been unconstitutional delay. Not only does this approach reflect a misallocation of the burden of proof, Defendants' evidence in support of this argument is unreliable. Many factors contribute to when Plaintiff CNS provides media coverage of a newly filed complaint. To measure delay by publication dates thus fails to yield an accurate determination of when a newly filed complaint becomes accessible to the public.

40. Plaintiffs' suggestion that Defendants create a media queue that affords the media preferential access is equally misplaced. Although Plaintiffs point to states which use the same technology as Odyssey that have chosen to implement a media queue,[3] Plaintiffs' First Amendment right of access does not exceed that of the general public. A media queue would thus not provide an adequate remedy for any unconstitutional delay. *See Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 773-74 (1985) (White, J., concurring) (observing that the First Amendment does not guarantee the press a constitutional right and special access to information not available to the public generally); *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 326 n.5 (4th Cir. 2021) ("The media's rights of access are co-extensive with and do not exceed those rights of members of the public in general.") (internal quotation marks omitted).

---

[3] "In California, Georgia, and Nevada, for example, courts which use the same electronic filing and case management system [as Odyssey], based on software developed by Tyler Technologies, Inc., which is also Vermont's vendor, have provided timely access to CNS, and other credentialed members of the press, through a 'Press Review Queue' feature that allows CNS, at no cost to the court, to view newly filed complaints as soon as they are received by the court and without waiting for court staff to process them." (Doc. 61 at 8 n.6) (internal quotation marks omitted) (alteration accepted).

15

## III. Conclusions of Law and Analysis.

### A. Whether Plaintiffs Have a First Amendment Right of Access to Newly Filed Civil Complaints.

"[I]t is well established that the public and the press have a 'qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)); *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 (1980) (recognizing a right of access "implicit in the guarantees of the First Amendment").[4] "[T]he First Amendment goes beyond protection of the press and the self-expression of individuals to prohibit government from limiting the stock of information from which members of the public may draw." *Id.* at 575-76 (internal quotation marks omitted) (quoting *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 783 (1978)).

The Second Circuit has recognized a First Amendment right of public access "to civil trials and to their related proceedings and records." *New York Civ. Liberties Union v. N.Y.C. Transit Auth.*, 684 F.3d 286, 298 (2d Cir. 2012) (collecting cases). "[T]he need for public access . . . is grounded in the 'need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice.'" *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 164 (2d Cir. 2013) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995)).

> [The Second Circuit has] applied two different approaches when deciding whether the First Amendment right applies to particular material. The "experience and logic" approach applies to both judicial proceedings and documents, and asks "both whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in

---

[4] There is also a common law "general right to inspect and copy public records and documents, including judicial records and documents." *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). Plaintiffs allege only a violation of a First Amendment right of access, which provides more "substantive protection to the interests of the press and the public" than the common law. *Lugosch*, 435 F.3d at 124 (quoting *Rushford v. New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)).

question." The second approach—which we adopt only when analyzing judicial documents related to judicial proceedings covered by the First Amendment right—asks whether the documents at issue "are derived from or are a necessary corollary of the capacity to attend the relevant proceedings."

*Id.* (citations omitted).

In *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, the Second Circuit applied the "experience and logic" approach and found a presumptive First Amendment right of access to civil complaints. 814 F.3d 132, 141 (2d Cir. 2016). In so ruling, the Second Circuit noted that when a complaint is withheld, it "leaves the public unaware that a claim has been leveled and that state power has been invoked—and public resources spent—in an effort to resolve the dispute." *Id.* The public right of access generally attaches when a newly filed civil complaint is received by a court. *See Lugosch*, 435 F.3d at 126 (emphasizing "the importance of immediate access where a right to access is found[]").

Defendants contend Plaintiffs seek instantaneous access to newly filed complaints akin to allowing a reporter to go behind the clerk's desk and open a Vermont Superior Court's mail. This comparison is nonsensical in the context of an electronic filing system. In Odyssey, there is no opening of an envelope or other physical handling that would make access upon filing impracticable. Instead, the only obstacle to immediate access to newly filed complaints is Defendants' pre-access review process. In effect, Defendants purposefully withhold immediate access by placing newly filed complaints in a review queue where they may be reviewed in a matter of minutes, hours, or days with virtually no guarantee as to when they will become accessible to the public. The delay differs significantly among and within the fourteen Vermont Superior Courts, varies day by day, and occurs with no predictability. It is Defendants' placement of newly filed complaints in this queue which must be justified under the First Amendment.

Because Plaintiffs have identified a First Amendment right to access to newly filed complaints, Defendants' motion to dismiss the Amended Complaint under Rule 12(b)(6) for failure to state a plausible claim for relief must be DENIED.

**B.    Whether the Case Should Be Dismissed as Moot.**

Defendants argue the Complaint is partially moot and will soon be completely moot because the Vermont Superior Courts are centralizing their review process for civil filings which will expedite review. Defendants anticipate centralization will be made permanent by the end of 2021. By Defendants' own admission, "[t]hese goals, of course, depend on the judiciary being able to fill all of the necessary positions, which it is working to do." (Doc. 44 at 32.)

"Dismissal of a case for lack of subject matter jurisdiction under Rule 12(b)(1) is proper when the district court lacks the statutory or constitutional power to adjudicate it." *Doyle v. Midland Credit Mgmt., Inc.*, 722 F.3d 78, 80 (2d Cir. 2013) (quoting *Ford v. D.C. 37 Union Local 1549*, 579 F.3d 187, 188 (2d Cir. 2009)). "When a case becomes moot, the federal courts 'lack[] subject matter jurisdiction over the action.'" *Fox v. Bd. of Trs. of State Univ. of N.Y.*, 42 F.3d 135, 140 (2d Cir. 1994) (alteration in original) (quoting *N.Y.C. Emps.' Ret. Sys. v. Dole Food Co.*, 969 F.2d 1430, 1433 (2d Cir. 1992)).

"[T]he party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that it exists.'" *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Id.* "[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings." *Id.* (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)).

"[A] defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Instead, "a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000); *see also Lamar Advert. of Penn, LLC v. Town of*

18

*Orchard Park*, 356 F.3d 365, 375 (2d Cir. 2004) ("The voluntary cessation of allegedly illegal conduct usually will render a case moot 'if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'") (quoting *Granite State Outdoor Advert., Inc. v. Town of Orange*, 303 F.3d 450, 451 (2d Cir. 2002)). "Where, as here, the defendant is a government entity, '[s]ome deference must be accorded to a [governmental body's] representations that certain conduct has been discontinued.'" *Lamar Advert. of Penn, LLC*, 356 F.3d 365 (first alteration in original). In this case, however, Defendants do not claim pre-access delay has ceased; they merely assert they are working on the Odyssey rollout and a centralization process and should be afforded additional time to complete those tasks.

As Plaintiffs point out, this case has been pending since May 20, 2021, Odyssey was first implemented in March 2020, and newly filed complaints still "sit in electronic queues, sometimes for days, waiting to be reviewed and processed before being made public." (Doc. 26 at 8.) Plaintiffs therefore contend that their claims are not moot. The court agrees.

Because Defendants have not voluntarily ceased the pre-access review process which Plaintiffs challenge, Plaintiffs' First Amendment claim is not moot. *See Schaefer*, 2 F.4th at 323 ("While the [Defendants'] improvements in rates of access are commendable, absent the relief Courthouse News [seeks], 'nothing bars [Defendants] from reverting' to the allegedly unconstitutional rates of access in the future.") (quoting *Porter v. Clarke*, 852 F.3d 358, 365 (4th Cir. 2017)). Defendants' motion to dismiss on mootness grounds is therefore DENIED.

### C.    Whether the Court Should Abstain From Exercising Jurisdiction.

As an alternative ground for dismissal, Defendants argue the court should abstain from exercising jurisdiction based on principles of comity, equity, and federalism.[5] In the

---

[5] Whether abstention is properly analyzed under Fed. R. Civ. P. 12(b)(1) is not settled law. *Compare Iacovacci v. Brevet Holdings, LLC*, 437 F. Supp. 3d 367, 374 (S.D.N.Y. 2020) ("A motion to abstain is considered as a motion to dismiss for lack of subject matter jurisdiction

Second Circuit, abstention is "not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction grounded in equitable considerations of comity." *Kaufman v. Kaye*, 466 F.3d 83, 88 n.1 (2d Cir. 2006) (quoting *Spargo v. New York State Comm'n on Jud. Conduct*, 351 F.3d 65, 74 (2d Cir. 2003)).

> Ordinarily, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." But the Supreme Court has recognized some "carefully defined" situations in which courts may abstain. To ensure that abstention remains "the exception, not the rule," federal courts may abstain only if a case falls into one of these "specific doctrines[.]"

*Schaefer*, 2 F.4th at 324 (citations omitted).

Defendants cite *Courthouse News Service v. Brown*, 908 F.3d 1063 (7th Cir. 2018), in support of abstention. In that case, the Court of Appeals for the Seventh Circuit concluded that the "principle of comity takes on special force when federal courts are asked to decide how state courts should conduct their business[,]" and a federal court should therefore "step back" while a state court transitions to electronic filing and works through the "implementation challenges and resource limitations" associated with the transition. *Id.* at 1074. The Seventh Circuit recognized that none of the "principal categories of abstention" were applicable but nonetheless found abstention "avoid[s] the problems that federal oversight and intrusion . . . might cause." *Id.* at 1071. In *Courthouse News Service v. Gilmer*, the Eastern District of Missouri followed *Brown* and abstained because it did not want to "dictate to, oversee, or otherwise insert itself into

---

pursuant to [Federal] Rule [of Civil Procedure] 12(b)(1).") (alteration in original) (quoting *Wilmington Tr., Nat'l Ass'n v. Est. of McClendon*, 287 F. Supp. 3d 353, 360 (S.D.N.Y. 2018))) *with Kilroy v. Mayhew*, 841 F. Supp. 2d 414, 416 (D. Me. 2012) ("This Court has previously noted that 'abstention is a prudential rather than a jurisdictional ground for dismissal,' and, therefore, when considering abstention it does 'not rely upon the pleading or burden requirements of either Rule 12(b)(1) or Rule 12(b)(6).'") (quoting *Christian Action Network v. Maine*, 679 F. Supp. 2d 140, 143 n.2 (D. Me. 2010)); *see also Vereline v. Woodsville Guar. Sav. Bank*, 2015 WL 9216684, at *2 (D. Vt. Dec. 16, 2015) ("A motion to dismiss based on the abstention doctrine *may* be analyzed under Rule 12(b)(1).") (emphasis supplied) (collecting cases).

the . . . operations and administration of its co-equal Missouri state courts" nor "impose on a state court a practice which is not currently employed by the Supreme Court of the United States." 2021 WL 2438914, at *9 (E.D. Mo. June 15, 2021). Other courts have not followed suit, and *Brown* and *Gilmer* remain outliers.

The Second Circuit has not ruled on abstention in the context of a challenge to pre-access review but has found abstention appropriate in cases "challenging the internal workings of state courts." *Kaufman*, 466 F.3d at 86 (collecting cases). In *Kaufman*, the plaintiff sought a declaratory judgment that New York state judicial appellate panel assignment procedures violated due process and requested the court to mandate by way of an injunction a new system for appellate panel assignments. *Id.* at 84. The Second Circuit found abstention appropriate because, among other things:

> [A]ny remedy fashioned by the state would then be subject to further challenges in the district court. Appellant—or any state court litigant dissatisfied with the panel of judges assigned to his or her appeal—could raise compliance issues under the putative federal injunction claiming that the state court's chosen remedy violated the Constitution or the terms of that injunction. Such challenges would inevitably lead to precisely the kind of "piecemeal interruptions of . . . state proceedings" condemned in *O'Shea* [*v. Littleton*, 414 U.S. 488 (1974)]. In short, we cannot resolve the issues raised here as to present assignment procedures without committing to resolving the same issues as to the remedy chosen by the state and as to the subsequent case-by-case implementation of the assignment procedures in the Second Department. This is exactly what *O'Shea* forbids.

*Id.* at 87.

Similarly, in *Disability Rights New York v. New York*, 916 F.3d 129, 134 (2d Cir. 2019), the Second Circuit rejected a request for an injunction requiring the New York courts to (1) notify litigants about rights to request modifications to proceedings; (2) hold proceedings that "provide augmented and substantive and procedural rights[;]" and (3) cease adjudications "until defendants ensure that the proceedings provide [requested] substantive and procedural rights[.]" *Id.* at 136. In upholding the district court's abstention, the Second Circuit cited *Brown* with approval and found that a federal court's ruling would govern "the occurrence of specific events that might take place" in future

state court proceedings and therefore represented the same threat of "ongoing, case-by-case oversight of state courts" present in *Kaufman*. *Id.*

An adjudication of this case does not require the piecemeal disruption to and intervention in state proceedings at issue in *Kaufman* and *Disability Rights*. There is no risk of "case-by-case implementation[,]" *Kaufman*, 466 F.3d at 87, because the remedy here is "more akin to [a] bright-line finding . . . than [an] ongoing monitoring of the substance of state proceedings[,]" and because "[a]n injunction requiring the [state courts] to provide . . . access to filed . . . civil complaints poses little risk of an 'ongoing federal audit' or 'a major continuing intrusion of the equitable power of the federal courts into the daily conduct of state . . . proceedings.'" *Courthouse News Serv. v. Planet*, 750 F.3d 776, 791-92 (9th Cir. 2014) (quoting *O'Shea*, 414 U.S. at 500). The Southern District of New York reached this same conclusion in a pre-access review case strikingly similar to the instant one. *See* Transcript of Hearing on Plaintiff's Motion for Preliminary Injunction at 47-48; *Courthouse News Serv. v. Tingling*, 2016 WL 8505086, at *1 (S.D.N.Y. Dec. 16, 2016), 2016 WL 8739010 (hereinafter, "*Tingling*").

The Second Circuit, itself, has cautioned that "the weight of the First Amendment issues involved counsels against abstaining." *Hartford Courant Co.*, 380 F.3d at 85, 100 (declining to abstain in right of access case where court was asked to determine "whether the public and press have a qualified First Amendment right to inspect docket sheets and, if so, the appropriate remedy for its violation by state courts"); *see also Planet*, 750 F.3d at 787 ("We disfavor abstention in First Amendment cases because of the risk . . . that the delay that results from abstention will itself chill the exercise of the rights that the plaintiffs seek to protect by suit") (ellipsis in original) (internal quotation marks and citations omitted). It has thus "carefully defined . . . the areas in which such abstention is permissible, and [abstention] remains the exception, not the rule." *Hachamovitch v. DeBuono*, 159 F.3d 687, 697 (2d Cir. 1998) (internal quotation marks omitted).

Because this case does not fit within traditional abstention categories and because it will neither result in piecemeal litigation, nor require continuing federal oversight of state court proceedings, abstention on the grounds of comity, equity, and federalism is not

required. *See Bethphage Lutheran Serv., Inc. v. Weicker*, 965 F.2d 1239, 1245 (2d Cir. 1992) ("[T]here is little or no discretion to abstain in a case which does not meet traditional abstention requirements.") (internal quotation marks omitted) (quoting *Mobil Oil Corp. v. City of Long Beach*, 772 F.2d 534, 540 (9th Cir. 1985)). Defendants' motion to dismiss on abstention grounds is therefore DENIED.

## D. Whether Plaintiffs' First Amendment Right of Access Was Violated.

A qualified First Amendment right of access attaches when a complaint is electronically filed. *See Courthouse News Serv. v. Planet*, 947 F.3d 581, 585 (9th Cir. 2020) ("[T]he press has a qualified right of timely access to newly filed civil nonconfidential complaints that attaches when the complaint is filed."); *Courthouse News Serv. v. New Mexico Admin. Off. of the Cts.*, 2021 WL 4710644, at *39 (D.N.M. Oct. 8, 2021) ("The qualified right 'attaches when the complaint is filed' in a traditional sense— when it is in the court's possession[.]") (quoting *Planet*, 947 F.3d at 585). "[The Second Circuit's] public access cases and those in other circuits emphasize the importance of immediate access where a right to access is found." *Lugosch*, 435 F.3d at 126 (collecting cases). "The constitutional right of access, however, is not absolute, and must, in certain circumstances, 'give way . . . to other rights or interests[.]'" *ABC, Inc. v. Stewart*, 360 F.3d 90, 98 (2d Cir. 2004) (alteration in original) (citing *Waller v. Georgia*, 467 U.S. 39, 45 (1984)).

"Once a First Amendment right of access to judicial documents is found, the documents 'may be [removed from public access] only if specific, on the record findings are made demonstrating that [this restriction] is essential to preserve higher values and is narrowly tailored to serve that interest.'" *United States v. Erie Cnty.*, 763 F.3d 235, 239 (2d Cir. 2014) (addressing document sealing) (alteration in original) (quoting *Lugosch*, 435 F.3d at 120); *see also Planet*, 947 F.3d at 596 ("[Defendant] must demonstrate first that there is a 'substantial probability' that its interest in the fair and orderly administration of justice would be impaired by immediate access, and second, that no reasonable alternatives exist to 'adequately protect' that government interest.") (citations omitted). "Broad and general findings and conclusory assertions are insufficient to justify

deprivation of public access to the record[.]" *Bernstein*, 814 F.3d at 144-45 (internal quotation marks and citations omitted) (alteration accepted).

Defendants must justify withholding a document to which there is a First Amendment right of access. *See, e.g.*, *Bernstein*, 814 F.3d at 144 ("To overcome the First Amendment right of access, the proponent of sealing must 'demonstrat[e] that closure is essential to preserve higher values and is narrowly tailored to serve that interest.'") (alterations in original) (quoting *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)).[6] In order to find this burden has been satisfied, a court must make "'specific, on the record findings . . . demonstrating that [withholding] is essential to preserve higher values and is narrowly tailored to serve that interest.'" *In re N.Y. Times Co.*, 828 F.2d at 116 (quoting *Press-Enter. Co.*, 478 U.S. 13-14).

Although courts agree on the importance of First Amendment access, they differ as to how much delay, if any, can be tolerated consistent with the U.S. Constitution. Some courts have held that the First Amendment "does not require . . . instantaneous access" and provides "some leeway where same-day access would be impracticable[.]" *Schaefer*, 2 F.4th at 328. The Second Circuit has held that public access must be immediate and contemporaneous:

> In light of the values which the presumption of access endeavors to promote, a necessary corollary to the presumption is that once found to be appropriate, access should be immediate and contemporaneous. . . . The newsworthiness of a particular story is often fleeting. To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression.

---

[6] *See also Tingling*, 2016 WL 8739010 (finding "the clerk" had the "burden of demonstrating that its policy of refusing to provide public and press access to newly filed complaints until they are processed is [] essential to preserve higher values [and] is narrowly tailored to serve a substantial government interest"); *Planet*, 947 F.3d at 596 ("[Defendants] must demonstrate [rigorous scrutiny is satisfied.]"); *Courthouse News Serv. v. Schaefer*, 2 F.4th 318, 329 (4th Cir. 2021) ("Clerks offered no evidence . . . to carry the government's burden.") (internal quotation marks and citation omitted); *Courthouse News Serv. v. New Mexico Admin. Off. of the Cts.*, 2021 WL 4710644, at *41 (D.N.M. Oct. 8, 2021) (relying on *Planet*).

*Lugosch*, 435 F.3d at 127 (quoting *Grove Fresh Distrib., Inc. v. Everfresh Juice Co.*, 24 F.3d 893, 897 (7th Cir. 1994) (internal quotation marks omitted)). Courts, in turn, have grappled with the correct definition of "contemporaneous." For example, although the Eastern District of Virginia noted that Black's Law Dictionary defined "contemporaneous" as "occurring . . . at the same time" and Merriam-Webster's dictionary used similar language, it nonetheless defined "contemporaneous" "in this context" to mean "on the same day of filing, insofar as practicable and if not practicable within one court day." *Courthouse News Serv. v. Schaefer*, 440 F. Supp. 3d 532, 559 (E.D. Va. 2020). The Fourth Circuit endorsed this "flexible standard" and found it consistent with its case law defining "contemporaneous" to mean "as expeditiously as possible." *Schaefer*, 2 F.4th at 328. In *New Mexico Admin. Off. of the Cts.*, 2021 WL 4710644, at \*41, the court permitted no greater than five business hours of pre-access delay because that "comes closest to the traditional right of access that the press had to civil complaints" prior to efiling.

Although some courts have sought to impose a bright-line rule for permissible delay, here the focus must be on whether *any* delay is appropriate because any restriction on the First Amendment right of access must have "sufficient justification." *Newsday*, 730 F.3d at 165; *see also Planet*, 947 F.3d at 596 (requiring justification for any delay to "immediate access" to newly filed complaints); *Tingling* (questioning defendant's justification of First Amendment restriction for "ministerial review"). As the Second Circuit has observed, when a governmental entity contends that the "limited denial of access" is insubstantial, it "begs the question of whether there was a sufficient factual basis for denying access at all." *ABC, Inc.*, 360 F.3d at 100.

Defendants urge this court to find that their stated interests in the administration of justice and confidentiality justify a delay in the First Amendment right of access. Their proof in support of these stated interests is scant. They claim their rates of access are fast by national standards,[7] but they exclude the federal courts from their analysis and use

---

[7] Defendants' reliance on the "experience and logic" test for this argument is misplaced. In the Second Circuit, the "experience and logic" approach merely determines "whether the First

unreliable data from Plaintiff CNS's publication dates as support for an acceptable period of delay. The issue before the court is not how fast Plaintiffs cover new filings or whether Defendants' delay is comparable to that of other courts, but whether Defendants' pre-access review process is necessary to protect a higher interest and is narrowly tailored to achieve it. As this court noted, but for the pre-access review process, there would be no delay:

> [T]here would be no delay in an e-filing system. There could be 1,000 complaints; there could be 100,000 complaints. There's no delay. The only delay that's going to show up in e-filing is when you insert a staff member into it to do something else. Right? Because [efilers are filing] with all of the document information that they need, and it's hitting the docket, and there isn't any step in between there by staff. . . . So that, by definition, means that the delay is in this review process.

(Doc. 57 at 26:24-27:10.)

Defendants seek to justify much of the delay inherent in their pre-access review process by citing the Vermont Superior Courts' interest in the protection of the privacy of litigants and third-parties in confidential information. This interest is an important one. *See United States v. Doe*, 63 F.3d 121, 127 (2d Cir. 1995) ("[T]he privacy interests of individuals may also warrant [courtroom] closure orders in certain circumstances.") (collecting cases); *cf. Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984) (recognizing "substantial interest" in, among other things, the "privacy interests of litigants and third parties"). It does not, however, trump the First Amendment right of access unless the pre-access review process is also narrowly tailored and "essential to preserve higher values[.]" *Bernstein*, 814 F.3d at 144.

### E.    Whether Defendants' Pre-Access Review Process is Narrowly Tailored.

To be narrowly tailored, Defendants must prove that "reasonable alternatives" to their pre-access review process cannot "adequately protect" their asserted interests. *Id.*

---

Amendment right applies *to particular material*[,]" *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 164 (2d Cir. 2013) (emphasis supplied), it does not dictate the acceptable measure of delay.

Defendants offer no evidence that staff review of signatures, filing fees, and filing codes is necessary to protect the orderly administration of justice. *See Planet*, 947 F.3d at 597 (finding no evidence that immediate access resulted in "accounting issues[,]" "compromised the quality and accuracy of information logged into the [case management system,]" "created efficiency problems[,]" or "resulted in loss, destruction, or mutilation of, or otherwise compromised the 'integrity' of, case files"); *see also Courthouse News Serv. v. Jackson*, 2009 WL 2163609, at *4 (S.D. Tex. July 20, 2009) (finding twenty-four to seventy-two hour delays to verify correct case number, proper court, accurate title, and proper filing category were not narrowly tailored). Indeed, Odyssey's software system performs these same functions.

It is only Defendants' pre-access review for confidential information which is not automated in any respect. Although Defendants claim this review can be performed in approximately twenty minutes, it often takes several days to complete. Because it requires human intervention, the amount of time involved varies from day to day and court to court. At times, the delay involved is unjustifiable by any measure. There is, moreover, no guarantee when public access will be provided. Although centralization has improved the degree of delay it, too, involves human intervention which, in turn, is dependent on adequate staffing and other resource considerations.

As for protecting privacy interests, out of 4,156 electronically filed civil complaints, only three exhibits to two complaints were rejected during the pre-access review process because they contained confidential information. This is a minute fraction of the total complaints filed and demonstrates that the pre-access review process is not "essential to preserve higher values[.]" *Bernstein*, 814 F.3d at 144. Defendants cite no evidence that they experienced significant confidentiality breaches prior to the implementation of pre-access review, nor do they cite any court in the country that has found a similar process necessary.

Although Defendants argue that the absence of pre-access review would place "the onus solely on filers" and would "less effectively protect the integrity of the civil litigation process and privacy interests," (Doc. 44 at 30), the Vermont Superior Court

27

filing rules already place primary responsibility on filers. *See* V.R.P.A.C.R. 7(a)(1)(A) ("[T]he filer of a case record, whether in physical or electronic form, [must] determine whether all or part of the record being filed is not publicly accessible"); V.R.P.A.C.R. 7(a)(1)(B) (requiring filer to certify compliance with V.R.P.A.C.R.). Defendants provide no evidence that these safeguards, combined with post-access review, are insufficient. To the contrary, Defendants' own evidence reveals that placing the onus on filers has been overwhelmingly effective.

The *Tingling* decision is instructive. There, the clerk in a New York state court "review[ed] the proposed filing for [compliance] with venue, caption, case type, as well as the attorney's signature certification required by court rule[]" "to ascertain whether they contain materials that, by operation of law, may not be made available to the general public." Only after completing the review process were complaints made available to the public. The clerk argued that the review was necessary to ensure compliance with filing rules and "to prevent a narrow category of errant pleadings at the outset in order to prevent confusion and waste." The Southern District of New York rejected this argument and found the clerk "failed to meet its burden of demonstrating that its policy of refusing to provide the public and press access to newly filed complaints until after they are reviewed and logged is either essential to preserve higher values or is narrowly tailored to serve that interest." A similar outcome is warranted here.

Because Defendants fail to demonstrate a "substantial probability" that the orderly administration of justice and privacy rights of litigants and third parties would be significantly impaired without their pre-access review, that practice cannot withstand constitutional scrutiny. *Press-Enter. Co.*, 478 U.S. 1, 14. A policy is not narrowly tailored if "a substantial portion of the burden . . . does not serve to advance [Defendants'] goals." *Mastrovincenzo v. City of New York*, 435 F.3d 78, 98 (2d Cir. 2006). Against this backdrop, "it is the responsibility of the district court to ensure that [any restriction on access to] documents to which the public has a First Amendment right is no broader than necessary[.]" *United States v. Aref*, 533 F.3d 72, 82 (2d Cir. 2008).

Timely public access to court documents "allows the public to understand the activity of the . . . courts, enhances the court system's accountability and legitimacy, and informs the public of matters of public concern." *Bernstein*, 814 F.3d at 141. Defendants' pre-access review thwarts these objectives in an inconsistent, unpredictable, and unjustifiable manner.

Because Defendants have failed to sustain their burden to demonstrate that their pre-access review process is justified by higher interests and narrowly tailored to advance those interests, Defendants have violated the public's and Plaintiffs' First Amendment right of access to newly filed complaints.

### F.    Whether Plaintiffs Are Entitled to Injunctive Relief.

A plaintiff seeking a permanent injunction must establish "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010) (quoting *eBay v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). "An injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008).

To demonstrate irreparable harm, the moving party must establish an injury that is not remote or speculative but "certain and imminent harm for which a monetary award does not adequately compensate." *Wisdom Imp. Sales Co. v. Labatt Brewing Co.*, 339 F.3d 101, 113 (2d Cir. 2003). "Because the deprivation of First Amendment rights is an irreparable harm, in First Amendment cases 'the likelihood of success on the merits is the dominant, if not the dispositive, factor.'" *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 637 (2d Cir. 2020) (quoting *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013)); *see also SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 278 (2d Cir. 2021) ("The presence of irreparable injury to First Amendment rights, however, 'turns on whether the plaintiff has shown a clear likelihood of success on the merits[.]'") (quoting

*Beal v. Stern*, 184 F.3d 117, 123-24 (2d Cir. 1999)).

Plaintiffs have established that Defendants are violating their First Amendment right of access to newly filed complaints through the Vermont Superior Courts' pre-access review process and that an "injunction will prevent the feared deprivation." *Bronx Household of Faith v. Bd. of Educ. of City of N.Y.*, 331 F.3d 342, 350 (2d Cir. 2003). They have thus established irreparable harm. *See New York Civ. Liberties Union*, 684 F.3d at 305 (holding plaintiffs "would be irreparably harmed through the continued violation of [their First Amendment right of access]"). They have further established that their irreparable harm is ongoing. As the Ninth Circuit recently explained:

> CNS's reporting on complaints must be timely to be newsworthy and to allow for ample and meaningful public discussion regarding the functioning of our nation's court systems. . . . [T]he public interest in obtaining news is an interest in obtaining contemporaneous news. . . . Thus, that "old" news is not worthy of, and does not receive, much public attention has been widely recognized . . . [and] the need for immediacy of reporting news "is even more vital in the digital age," where timeliness is measured in terms of minutes or seconds.

*Planet*, 947 F.3d at 594 (citations omitted).

"In a suit against the government, balancing of the equities merges into our consideration of the public interest." *SAM Party of N.Y.*, 987 F.3d at 278 (citing *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 58-59 (2d Cir. 2020)). In this case, the balance of hardships tips in Plaintiffs' favor because the public interest is served by timely reporting on the operations of the courts and because "securing First Amendment rights is in the public interest." *N.Y. Progress & Prot. PAC*, 733 F.3d at 488. Correspondingly, "[n]o public interest is served by maintaining an unconstitutional policy when constitutional alternatives are available to achieve the same goal." *Agudath Israel of Am.*, 983 F.3d at 637.

Although "the Government has traditionally been granted the widest latitude in the dispatch of its own internal affairs," *Rizzo v. Goode*, 423 U.S. 362, 378-79 (1976) (internal quotation marks omitted), and "courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction[,]" the

court can safeguard these interests by limiting the scope of its injunction. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (citations omitted). Plaintiffs' request for an injunction prohibiting enforcement of all "policies and practices that deny Plaintiffs contemporaneous access to newly filed civil complaints" and "prohibiting [Defendants] from applying [V.R.P.A.C.R.] 7(a)(3)" is overbroad. (Doc. 16 at 21.) An injunction addressing only the specifically challenged pre-access review process and leaving internal procedures to the Vermont Superior Courts is more appropriate. This type of injunction "in no way restricts or comments on the regulations that are in place for [Defendants] to review and accept for filing . . . complaints when they are filed." *Tingling*.

For the foregoing reasons, Plaintiffs' request for permanent injunctive relief is GRANTED IN PART and DENIED IN PART. Defendants are hereby ENJOINED from prohibiting public access to newly filed civil complaints which have not been designated confidential by the filer until the Vermont Superior Court has completed a pre-access review process. Defendants may continue to restrict public access post-filing where a potential violation of their filing rules has been found.

## G. Whether Plaintiffs Are Entitled to Declaratory Relief.

The Second Circuit has identified five factors to consider in deciding whether to issue a declaratory judgment:

(i) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; (ii) whether a judgment would finalize the controversy and offer relief from uncertainty; (iii) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (iv) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and (v) whether there is a better or more effective remedy.

*New York Times Co. v. Gonzales*, 459 F.3d 160, 167 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359-360 (2d Cir. 2003)). Declaratory relief in this case would serve no purpose which the court's permanent injunction has not achieved. Accordingly, Plaintiffs' request for declaratory

31

relief is DENIED.

## CONCLUSION

For the foregoing reasons, the court DENIES AS MOOT Plaintiffs' motion for preliminary injunction (Doc. 26), DENIES Defendants' motion to dismiss (Doc. 43), GRANTS IN PART and DENIES IN PART Plaintiffs' request for permanent injunctive relief, and DENIES Plaintiffs' request for declaratory relief. (Doc. 16.) Defendants are HEREBY ENJOINED from delaying public access to electronically filed civil complaints until the Vermont Superior Courts' pre-access review process is complete.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 19th day of November, 2021.

Christina Reiss, District Judge
United States District Court